### LEWIS et al. v. LEWIS.

No. 6144—Opinion Filed March 21, 1916.

Rehearing Denied April 18, 1916. Second Petition for Rehearing Denied July 19, 1916.

(158 Pac. 368.)

**1. Divorce—Right of Action—Insane Defendant.**

Action for divorce or alimony alone, for any of the causes for which divorce may be granted, may be maintained against an insane defendant, represented by guardian, where it appears that the acts constituting the grounds of divorce were committed by such defendant prior to his becoming insane.

**2. Marriage — Validity — Presumption and Burden of Proof.**

A second marriage being shown as a fact, a strong presumption is raised in favor of its legality, which is not overcome by mere proof of a prior marriage. The party attacking such second marriage has the burden of proof to show that neither party to the first marriage had obtained a divorce, even though this involved the proving of a negative.

(Syllabus by Bleakmore, C.)

Error from District Court, Alfalfa County; James B. Cullison, Judge.

Action by Nancy Lewis against Jacob M. Lewis and another; Hattie A. Lewis intervening. Judgment for plaintiff, and defendant and intervener bring error. Affirmed.

Parker & Simons, L. A. Salter, and R. M. Chase, for plaintiffs in error.

Partridge & Wiles, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Alfalfa county on February 26, 1913, by Nancy Lewis, as plaintiff, against Jacob M. Lewis, an insane person, and Sarah E. Lewis, his guardian, for alimony. In the petition it is alleged that plaintiff and Jacob M. Lewis were married in the state of Kansas in August, 1906, and lived together as husband and wife until December of that year, when, by reason of his extreme cruelty and gross neglect of duty, she separated from him; that at the time of such marriage she owned and possessed personal property of the value of $400, which was sold by the said Jacob M. Lewis, and the proceeds appropriated to his own use; that said defendant Jacob M. Lewis is the owner of personal property of the value of $6,000 or $7,000, in the custody and control of his guardian, and also of certain real property. There was prayer for judgment for $400, the value of the personal property

of the plaintiff alleged to have been appropriated by defendant, and for alimony, attorney's fees, etc. On May 19, 1913, an order was made requiring defendants to pay into the registry of the court within ten days $75 suit money for plaintiff, $75 attorney's fees, and during the pendency of the action $15 per month temporary alimony. In compliance with this order the defendant guardian paid the sum of $225. Thereafter Hattie A. Lewis was permitted to intervene in said cause, and in her petition, duly verified, set forth that she was the wife of the defendant Jacob M. Lewis, to whom she was lawfully married on November 25, 1891, in Mercer county, Mo., and that she lived with him until about November 1, 1902; that in October, 1902, he became insane and wandered away from home; that such marriage never had been dissolved; that at the time of the alleged marriage of the plaintiff to defendant plaintiff was 55 years of age, and defendant 37; that defendant was at that time insane and incapable of contracting marriage; and that such marriage was void for the reason that defendant and intervener were husband and wife.

The defendant, Sarah E. Lewis, answered alleging that Jacob M. Lewis had been insance since the year 1901, and was mentally incapable of contracting the alleged marriage with plaintiff; that plaintiff was not and never had been the lawful wife of said Jacob M. Lewis, by reason of the fact that at the time of her pretended marriage to him he had a living wife in the person of the intervener, Hattie A. Lewis, to whom he was lawfully married in November, 1891, and from whom he had never been divorced. She denied upon information and belief that at the time of her alleged marriage to Jacob M. Lewis the plaintiff was the owner of the personal property referred to in the petition, or that he appropriated the same as therein alleged, and alleged that the said Jacob M. Lewis was adjudged insane on September 16, 1909, and was confined in a hospital for the insane at Ft. Supply, Okla., and prayed that the pretended marriage between the plaintiff and said defendant be declared void.

There was no issue of either marriage. The only evidence relative to a dissolution of the first marriage, of defendant and the intervener, was the testimony of Hattie A. Lewis that she was still the wife of defendant; that she had never been divorced from him, although she stated that he had instituted proceedings for divorce against her in the county of her residence in Missouri, to which she filed no answer and paid no attention; that she heard that said case was "throwed out"; that she made no effort to locate him, and knew nothing concerning him

during the years of his absence and until after the institution of this action, when she was informed by an uncle of the defendant that he had been married to plaintiff. It was known by the evidence that the defendant Jacob M. Lewis in the 20 years of his separation from intervener had lived in many jurisdictions.

The court found:

"The court finds from the evidence in this case that plaintiff and the defendant Jacob M. Lewis were married on August 14, 1906, in the state of Kansas. The court further finds that the intervener, Hattie A. Lewis, was married to the defendant Jacob M. Lewis on November 25, 1891, in the state of Missouri. The evidence further shows that intervener and the defendant Jacob M. Lewis only lived together a short time, possibly a year and a half; that the intervener left the defendant Jacob M. Lewis and abandoned his home shortly after their marriage; that at the time of the marriage of intervener and the defendant Jacob M. Lewis the defendant Jacob M. Lewis was about 22 years of age; that the intervener, his first wife, was about 14½ years of age; that during the married life of the intervener and the defendant **Jacob M. Lewis**, there was no property accumulated.

"The court further finds that the intervener never made any attempt to learn of the whereabouts of Jacob M. Lewis after their separation, until recent years; that she has lived separate and alone and from the defendant Jacob M. Lewis for a period now of about 22 years, and is now a resident of the state of Missouri, and has been since her marriage. The evidence further shows that the defendant Jacob M. Lewis is of a roving disposition, having lived in various places and different states for 20 years; that the defendant was of violent temper, impulsive, addicted to strong drink, and in fact had periods of chronic or temporary insanity; that at the time of his marriage to the plaintiff, Nancy Lewis, he was many years younger than plaintiff; that he was engaged in business in the state of Kansas and in the vicinity where the plaintiff lived before their marriage, and was conducting business in the ordinary way, as the ordinary man would do; that he paid his attentions to the plaintiff several months before their marriage and bestowed gifts upon her; that he talked to plaintiff's relatives and friends in regard to the plaintiff and her character, and looked upon and regarded the plaintiff as a good and virtuous woman; that both plaintiff and defendant Jacob M. Lewis were in good faith when they married; that plaintiff married the defendant Jacob M. Lewis in good faith, for a home, and for a few months they resided in plaintiff's home; that later on and in a short time they moved to another part of the state of Kansas, where the defendant became dissatisfied, and where the plaintiff testified that she became afraid of the defendant Jacob M. Lewis, and left his bedside and home; that immediately after plaintiff left

the home of plaintiff and defendant Jacob M. Lewis said defendant sold what property they had at public sale and kept the proceeds thereof.

"The evidence shows that the plaintiff possessed and held in her own name and right at the time of the marriage about $400 worth of personal property; that there was no other property acquired by plaintiff and the defendant Jacob M. Lewis during their marriage. The evidence further shows that the defendant Jacob M. Lewis has fallen heir to about $4,000 worth of personal property since the separation of plaintiff and defendant Jacob M. Lewis, no part of which this plaintiff helped to acquire.

"The evidence fails to show any insanity on the part of the defendant Jacob M. Lewis from the year 1891 to the year 1908. The evidence does not disclose that the intervener was ever divorced from the defendant Jacob M. Lewis, but does disclose that she had abandoned him for a period of nearly 20 years.

"The court further finds that the marriage between plaintiff Nancy Lewis and Jacob M. Lewis on August 14, 1906, was valid and now exists. * * *

"The court further finds from the evidence and facts and circumstances surrounding this case that the plaintiff is the legal and lawful wife of the defendant Jacob M. Lewis and entitled to support out of his estate until his status as to being sane or otherwise shall have been determined or until death shall overtake him.

"It is therefore ordered, adjudged, and decreed by the court that the divorce be and the same is hereby rejected.

"It is further ordered and decreed by the court that the plaintiff Nancy Lewis shall have and judgment is hereby given her in the sum of $20 per month for a period of 20 months during the settlement of the estate of the defendant Jacob M. Lewis, as maintenance or support as his lawful wife; that said maintenance or support money shall be deemed and is by the court declared and adjudged to be a lien against the personal property, and all the property that the defendant Jacob M. Lewis now owns or possesses and his guardian is by the court hereby directed to pay to the clerk of the district court of Alfalfa county, Okla., the sum of $20 on the 1st day of each and every month beginning on December 1, 1913, for the support and maintenance of the plaintiff, and continue to pay the same on the 1st day of each and every month until the guardian of the person and estate of Jacob M. Lewis shall have paid to the clerk of said court the sum of $400."

It is urged on behalf of defendant and intervener: (1) That an action of this character cannot be maintained against an insane person; and (2) that the judgment of the court is contrary to the evidence and the law.

1. We are of opinion that an action for divorce, or alimony alone, for any of the causes for which divorce may be granted, may be maintained against an insane defendant, represented by guardian, where it appears that the acts constituting the grounds of divorce were committed by such defendant prior to his becoming insane. Long on Domestic Relations, sec. 214. In 2 Bishop on Marriage, Divorce, and Separation, sec. 518, it is said:

"Divorce being a civil proceeding, and it being established practice in the civil department of our law to maintain suits against insane parties the same as against sane ones, there can be no just ground for excepting divorce causes. Both in reason and in authority insanity may excuse an act otherwise unlawful, but where it does not it is no defense against the injured person's claim for redress. To deny the law's justice to the sane one because of the other's insanity would be to cast in part on the former the burden which God had laid wholly on the latter. Divorce, where there is cause for it, is the plaintiff's right. If the defendant were sane, he could not prevent it; he has no election. Therefore it is not otherwise when he is insane." Rathbun v. Rathbun, 40 How. Prac. (N. Y.) 328; Douglass v. Douglass, 31 Iowa, 421; Stratford v. Stratford, 92 N. C. 297; Worthy v. Worthy, 36 Ga. 45, 91 Am. Dec. 758; Bradford v. Abend, 89 Ill. 78, 31 Am. Rep. 67.

2. The law will always presume against bigamy and immorality, and in favor of innocence and virtue, and hence that a former marriage shown once to have existed, if the parties thereto are alive, had been dissolved by divorce. The doctrine firmly established in this state is:

"A second marriage being shown as a fact, a strong presumption is raised in favor of its legality, which is not overcome by mere proof of a prior marriage, and that the husband had not obtained a divorce before the second marriage. The party attacking such second marriage has the burden of proof to show that neither party to the first marriage had obtained a divorce. * * * *

"The law is so positive in requiring a party who asserts the illegality of a marriage, to take the burden of proving it that such requirement is enforced, even though it involve the proving a negative. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proofs, the law raises a presumption of its legality, not only casting the burden of proof on the party objecting, but requiring him throughout and in every particular plainly to make the fact appear against the constant pressure of this presumption that it is illegal and void." Chancey v. Whinnery, 47 Okla. 272, 147 Pac. 1036; Haile v. Hale, 40 Okla. 101, 135 Pac. 1143; 1 Bishop on Marriage, Divorce, and Separation, sec. 956 et seq.; Long on Domestic Relations, sec. 96.

There is a total failure of the evidence to establish the insanity of the defendant Jacob M. Lewis at the time of his marriage to the plaintiff in the year 1906.

An examination of the entire record discloses no prejudicial error.

It follows therefore that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.