## HIGHTOWER v. HIGHTOWER.   (No. 2458.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 17, 1921.)

1. **Husband and wife** ☞264—**Finding that money deposited in wife's name was not her separate estate sustained.**

In action by divorced wife against former husband to recover from him money that he had deposited in a bank in her name, and had withdrawn, a finding by the trial court that such money was community property and was not the separate property of the wife *held* sustained by the evidence, notwithstanding testimony of the wife and the presumption of ownership in her created by Gen. Laws 1913, c. 32 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4622); the latter presumption being rebuttable.

2. **Appeal and error** ☞1012(2)—**Finding not set aside because against preponderance of testimony.**

Where there is testimony to support a finding of the trial court, it will not be set aside because contrary, in the opinion of the appellate court, to a mere preponderance of the testimony, but to warrant it in doing so the testimony must be so overwhelmingly against the finding as to suggest prejudice or bias, or other improper motive on the part of the trial judge.

Appeal from District Court, Lamar County; A. P. Dohoney, Judge.

Action by Mrs. Lloyd Hightower against Eddie Hightower. Judgment for defendant, and plaintiff appeals. Affirmed.

May 1, 1917, appellee operated a restaurant in Paris, known as "Eddie's Cafe." He had an account with a bank there in the same name. On the day specified, when there was a balance of $2,452.92 in his favor on said account, he had the bank to close it and to transfer the balance to an account he opened in the name of appellant, then his wife. Thereafter he deposited sums aggregating $547.08, received by him in the operation of the restaurant, for credit on the account he opened in appellant's name. Afterward he and appellant drew checks against the account, so that the balance there of August 27, 1917, was only $1,500. June 28, 1920, appellant commenced suit against appellee for a divorce. August 6, 1920, they agreed on a partition of the community property between them. By this agreement appellant was to have the homestead they owned, the household and kitchen furniture, and $3,500 in money and bonds. Appellee was to have the remainder of the property belonging to the community estate, and was to pay appellant $25 per month "so long," it was recited, "as Elizabeth, the minor named in plaintiff's petition, is under age or lives with plaintiff, for support and maintenance of said minor." August 7, 1920, a divorce was granted appellant. The agreement she and appellee entered into partitioning the community property, which was reduced to writing and signed by them, was made a part of the judgment granting the divorce. Appellant received the part of the community property she was entitled to by the terms of the agreement. This suit, commenced by her January 12, 1920, was to recover of appellee the $1,500 balance of the account in her name, which the bank held August 27, 1917, as stated above. She alleged that same was a part of her separate estate, and that appellee, about January 1, 1920, without her knowledge or consent, and with intent to defraud her, unlawfully checked the money out of the bank and appropriated it to his own use. In his answer appellee denied that the money in question belonged to appellant's separate estate, alleged that it belonged to the community estate between them, partitioned in conformity to their agreement as stated, and set up the judgment in the divorce suit as a bar to the recovery sought by appellant. At the trial appellant, testifying as a witness, said that in October, 1917, appellee gave her the passbook covering the account in her name, saying, "Here is your present." She took it, she said, "and," quoting from the statement of facts, "looked at it and said, 'Fifteen

hundred dollars?' and he said 'Yes.' I said, "You give this to me?' and he said, 'Yes.' I said, 'What for?' and he said, 'A birthday present.' As to when my birthday was in regard to the time he gave me this book, my birthday was in September, and he gave me the book in October, 1917."

She further testified:

"At the time I made the settlement in the divorce proceedings I did not know that this money had been transferred out of my name. At the time I made that settlement I believed that the money was still in the bank."

Appellee, after the court admitted the judgment in the divorce suit as evidence, testifying as a witness, said he drew the money out of the bank before the time when he and appellee entered into the partition agreement, and said, further, quoting from the statement of facts:

"In 1917 I was engaged in the café business at 32 South Main street in a building just this side of where the Best Café is now. I kept my bank account during that time with the Lamar State Bank & Trust Company. Up to May 1, 1917, my bank account was kept in the name of Eddie's Café, and later on it was changed. I made the change and changed it to the name of Lloyd Hightower. I did that because I was kinder short of funds, and I had a painter boarding with me, and he got into trouble, and I changed the money and put it in her name to keep from paying his bond at that time. Later on I did pay it, and I lost his board, about $40. I was on this man's bond, and I afterwards settled it. That was the reason I transferred this money to the name of Lloyd Hightower. I did not at any time deliver that passbook to Mrs. Hightower. I suppose she got it out of the trunk, or off the table somewhere. I never did make the statement to her that she testified to, and told her that I gave her the money. I never said anything of the sort to her. The money shown in the passbook as deposits was money I received from Eddie's Café, the business I was conducting at that time. Every bit of that money came from the receipts of Eddie's Café, and all of it was taken in during the time I was married to Mrs. Hightower."

Finding that the money in question belonged to the community estate between the parties, the trial court, before whom the case was tried without a jury, sustained appellee's plea of res adjudicata, and rendered judgment that appellant take nothing by her suit. Thereupon she prosecuted this appeal.

B. B. Sturgeon, of Paris, for appellant.
J. S. Patrick, of Paris, for appellee.

WILLSON, C. J. (after stating the facts as above). [1, 2] The judgment is attacked on the ground alone that it was not warranted by the evidence. It is not contended that the balance of the account in the bank in the name of Eddie's Café did not belong to the community estate between the parties at the time that account was closed, nor is it contended that the sums afterwards deposited for credit on that account did not belong to said estate. The contention is that it conclusively appeared that appellee gave said balance and the sums so deposited to appellant, or if it did not conclusively appear that he did so it appeared from a preponderance of the testimony that he gave same to her. The evidence as to gifts claimed, aside from that showing the new account opened with the bank to have been carried in appellant's name, consisted alone of testimony of appellant that appellee gave her the balance of the closed account and testimony of appellee that he did not give it to her. Of course, it is not contended that the court did not have a right to resolve the conflict in that testimony in appellee's favor. The contention seems to be that, while he had that right, he did not have a right to treat appellee's testimony as sufficient to overcome the presumption created by Act March 21, 1913 (General Laws 1913, p. 61; art. 4622, Vernon's Statutes). The provision invoked in the act referred to is as follows:

"Any funds on deposit in any bank or banking institution, whether in the name of the husband or the wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account."

If the presumption created by the statute was not an irrebuttable one—and we do not think it was—the contention should be overruled; for if it was rebuttable the trial court, as the judge (trying the case as he did without a jury) of the credibility of the witnesses and weight to be given the testimony before him, had a right to conclude, as the judgment shows he did, that the presumption was sufficiently rebutted by the testimony of appellee referred to in the statement above. The rule on appeal is that where there is testimony to support a finding it will not be set aside because contrary, in the opinion of the appellate court, to a mere preponderance of the testimony. In such a case the testimony must be so overwhelmingly against the finding "as to suggest prejudice or bias or other improper motive on the part of the trial judge." Traction Co. v. Arnold, 211 S. W. 275; and see Deaton v. Hamilton County, 220 S. W. 577; Smith v. Coburn, 222 S. W. 344; Jobe v. Patton, 222 S. W. 987; Gordon v. Gordon, 224 S. W. 716; Jones v. Fink, 209 S. W. 777. It is not pretended that the testimony to the contrary of the trial court's finding was of that nature.

The judgment is affirmed.