## EDWARDS et al. v. EDWARDS.

No. 14128—Opinion Filed Nov. 25, 1924.

Rehearing Denied March 19. 1925

(Syllabus.)

**1. Appeal and Error—Preserving Error — Overruling Demurrer.**

No question of law is presented to this court for review by an assignment that the trial court committed error in overruling the defendants' demurrer to plaintiff's petition, where it fails to appear that an exception to the order was taken to the time and preserved in the record.

**2. Property—Title—Fruits of Illegal Enterprise.**

While it is true that courts will not lend their remedies to consummate illegal or immoral transactions, or to cause to be enforced contracts based upon illegal considerations, yet when such transactions have been fully completed. and the gains and profits arising therefrom are such as the law recognizes as subject to private ownership, the control and disposition thereof is cognizable by the courts as if the property had not been the subject of the illegal transaction or enterprise. Legitimate property, when the means of acquisition thereof is not an issue as to ownership. howsoever acquired, is the subject-matter of legal rights.

**3. Appeal and Error — Review of Equity Case—Findings—Conclusiveness.**

Assignments of certain specific findings of fact made by the trial court as error, cannot be sustained here, when made in a cause of purely equitable cognizance, unless such findings are clearly against the weight of the evidence. In the instant case, plaintiff not only pleaded the essential, salient, and controlling facts necessary to sustain her cause of action, but also pleaded the community property law of the state of Texas as the law fixing her rights in the property involved herein. The findings of the trial court as to each is well supported by the record.

**4. Trusts—Constructive Trust — Husband and Wife—Rights of Wife in Community Property.**

The findings of the trial court were in part

that certain specific personal property described in the decree was accumulated by plaintiff and her husband, while citizens of Ranger, Texas, and the money which purchased the real estate and mortgage notes was likewise accumulated there; that the community property law of the state of Texas is to the effect that all property acquired by either husband or wife during marriage, except that acquired by gift, devise, or descent. is the common property of both; that on removing to Oklahoma, the law of this state attached and governed the rights of the husband and wife to all such property; that the amount of the same belonging to the community was found to be $50,828; that in said amount the plaintiff had a vested one-half interest, which was in the possession of the husband. Held, that the husband was the trustee of one-half of said amount in his possession, for the benefit of the plaintiff.

**5. Same—Pursuit of Trust Property.**

Certain real estate and mortgage notes were purchased by the plaintiff's husband with money belonging to plaintiff, the title to which was caused by him to be placed in the name of the defendant Cora E. Edwards, for the purpose of depriving plaintiff fraudulently of the trust property. Under this state of facts, a constructive trust was created in said property for plaintiff. If the value of the property so purchased, together with the other property held by him in trust for her, likewise traced into the hands of the said defendant, does not exceed the amount held by him as trustee for plaintiff's benefit, the decree of the trial court stamping such property with a constructive trust —for benefit of the plaintiff—is not erroneous, where it is not shown that any part of the property and money held in trust for her benefit had been otherwise disposed of with her consent.

**6. Estoppel—Election of Remedies as Estoppel.**

On the 29th day of March, 1921, plaintiff herein filed in the district court of Oklahoma county a suit against her husband, W. L Edwards, seeking alimony, and in such suit she alleged, among other things, that she had been a resident of the state of Oklahoma for a period of one year prior thereto. The allegations of the petition filed in that suit were pleaded by the defendants in this action as constituting an estoppel by election of remedies against the plaintiff, from either (a) seeking the remedy asked in the instant suit, or (b) claiming that she was a resident of the state of Texas at any time within a year prior to March 29, 1921. Plaintiff's husband departed this life 5 days after the filing of the first-named suit. Held, that since the first action did not proceed to judgment and no advantage was gained thereby for plaintiff, and no detriment was

suffered by the defendants, the doctrine of election of remedies and estoppel on account thereof to pursue the remedy sought by the instant action cannot be successfully urged.

**7. Husband and Wife—Community Property—Trusts—Burden of Proof.**

Under the community property law of the state of Texas as pleaded and found herein, all property in the name or possession of either spouse belongs prima facie to the community, and where one of the spouses traces the same into other species of property, the title thereto being taken in a third party, without consideration being paid by said third party in good faith therefor, and the said third party seeks to show, as a defense against a constructive trust being declared in favor of plaintiff, that the property was the accumulation of money advanced by them for investment, the burden is on such party to show the same. Record in the instant case examined, and held, that there was nothing to disclose that the property here in question was separate property, within the meaning of the law, or that the same was accumulated, by reason of any money advanced by, and invested for, the defendants.

**8. Trusts—Constructive Trusts—Pursuit of Property.**

If a trustee or other fiduciary person, having money or any other kind of property belonging to another in his hands, wrongfully or fraudulently uses the same for the purchase of real estate or personal property, taking the title thereto in the name of another, equity impresses a constructive trust upon the new form or species of property, wherever found, and into whosesoever hands it may be traced or identified, except in those of a bona fide purchaser for value, without notice of the trust character thereof.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Annabelle Edwards against Cora E. Edwards and J. H. Edwards to establish a resulting trust in certain real and personal property of which Cora E. Edwards held possession and legal title. Judgment for plaintiff. Defendants bring error. Affirmed.

Cress & Tebbe, for plaintiffs in error.

Moman Pruiett, Williams & Luttrell, and Chas. H. Garnett, for defendant in error.

BRANSON, J. It is unnecessary to discuss the proceedings ancillary to the main questions, and which had for their purpose the maintenance of the status quo of the property pending this litigation. We go to the main questions.

The suit is in equity and is for the purpose of having a trust decreed in certain real and personal property in favor of the plaintiff. Annabelle Edwards was the plaintiff in the district court. The relief sought was against Cora E. Edwards (Mrs. J. H. Edwards) and J. H. Edwards (husband of Cora E. Edwards) and Cora E. Edwards as executrix of the will of W. L. Edwards, deceased. The plaintiff secured a decree in the trial court, and the defendants appeal. Herein they will be referred to as they bore the relation plaintiff and defendants in the trial court.

W. L. Edwards, known to his acquaintances, and hereinafter referred to, as Billy Edwards, was the son of the defendants. He died on April 3, 1921, a resident of Oklahoma county. The plaintiff is his widow. She and Billy became acquainted in the Healdton oil district in this state about 1917, and were married at Galveston, Tex., in the summer of 1918. In the spring of 1919 they moved to the Ranger and Desdemona oil districts (then booming), in the state of Texas becoming citizens of said state, and voting there. At the close of 1920, they moved back to Oklahoma, becoming citizens and residents of Oklahoma City. At the time of moving to Texas, not long returned from the army camp Billy had little or no money. Annabelle was in not much better financial condition. They undertook to make money in the Lone Star State, and the rapidity of its acquisition necessarily will appear herein. The diligence and fidelity of each to this purpose cannot be fairly questioned from the record. She did her part, he knowing what it was; and he did his part, she knowing what that was. Much is drawn out in the record as to the questionable character of the businesses they conducted there; and the extended and learned elaboration thereon by the lawyers all but takes us into fields of jurisprudence into which the tether of this case will not permit us going. No more will be said herein, as to the character of the businesses from which the fortune involved herein so quickly came, than is necessary, for Billy has passed beyond the realm of controversial refutation, and the heart of the survivor of this marital union has no doubt expiated it with sorrow, and her eyes with tears.

In substance and effect, the plaintiff's petition set out her marriage to Billy Edwards, the accumulation of the property, alleged to be approximately $80,000, at Ranger, Tex., during the years 1919 and 1920; that he and she were residents and citizens of the state of Texas during said time, and

specifically pleaded the provisions of the Constitution and statutes of Texas as to community property; their removal to Oklahoma at the close of 1920, and the investment of the money accumulated in Texas in the property as to which a trust is sought to be declared.

The defendants' answer in substance and effect denied the allegations of the plaintiff, and set up that they had from time to time furnished Billy Edwards money to invest for them, and that the properties that he had in the state of Texas were the accumulations therefrom; that the plaintiff knew that Billy Edwards was engaged in the gambling business in the Texas oil fields, and that the money accumulated by him was so made, and that he carried on this unlawful practice by and with the consent of the plaintiff, and further pleaded that plaintiff had filed a suit for alimony against Billy Edwards March 29, 1921, in which she alleged that she had been a bona fide resident of Oklahoma for a year last past, and prayed for alimony, and that by reason thereof she had elected to waive her rights now pleaded under the community property laws of the state of Texas, etc.

The record in this case is voluminous. The arguments on the part of counsel for the respective parties partake of the same nature. The trial court made specific findings of fact and conclusions of law, and based upon the same, entered judgment for the plaintiff. To sustain the appeal, the defendants assign certain errors in this court, in number 39. It appears from the briefs filed by the defendants that only 11 of these 39 assignments are now presented to this court for consideration; the remaining of these assignments will not be discussed, except as to matters therein referred to which are incidentally considered in passing on the 11 presented. Arthur v. Coyne, 32 Okla. 527, 122 Pac. 688; Hopley v. Benton, 38 Okla. 223, 132 Pac. 808; National Bank v. Oklahoma State Bank, 80 Okla. 239, 195 Pac. 768.

The first assignment of error is that the court erred in overruling the demurrer of the defendants to the petition of the plaintiff. There is nothing presented to this court on this assignment of error, for that the record discloses (C. M. 62) that no exception was saved by the defendants to the order of the court overruling the demurrer to the amended petition.

The second assignment of error is that the trial court erred in not sustaining the demurrer to the evidence of the plaintiff and holding it was insufficient to warrant a recovery. The questions raised under this assignment will be taken up later, with other assignments to the same import.

The third assignment is to the effect that error was committed in admitting incompetent, immaterial, and irrelevant testimony on behalf of the plaintiff to which the defendants duly excepted. Under this assignment the defendants contend (a) that one Burns testified over the objection of the defendants to a conversation had with Billy Edwards in regard to a proposed divorce and alimony suit by plaintiff, in which Billy Edwards had stated in effect that he had anticipated a proceeding of that nature, and for that reason he had carried the money accumulated in Texas in his mother's name at the bank. The specific objection made to this testimony is that said Burns was the attorney for Billy Edwards, and as such received the communication testified to. There is nothing in the record in this case which would, with reason, justify the conclusion that the relation of attorney and client existed between the witness and Billy Edwards at the time of the conversation in question. The conversation seems to have occurred by chance at or near the court house in Oklahoma City, and in the conversation Billy told Burns in effect that he had anticipated a divorce suit by his wife and that he had been keeping his money and property in his mother's name to prevent his wife from getting any part of it. At the time of this alleged conversation, the alimony suit had in fact not been filed, and it fails to appear that Billy Edwards had any litigation pending in which he had Burns employed as an attorney. We find no fault with the authorities cited on behalf of the defendants as to the incompetency of an attorney to testify as a witness, without the consent of his client, where such relation exists. U. S. v. Costen, 38 Fed. 24; Sheehan v. Allen (Kan.) 74 Pac. 245; State v. Snowden (Utah) 65 Pac. 479. But these authorities are without force in support of the objection here, since, as set out above, the record fails to disclose that the relation of attorney and client existed. This was the conclusion of the trial court, and is supported by the record.

The next objection urged under this assignment is to the testimony of one George Ferguson, who on being asked as to a conversation had with Billy Edwards in Ranger, Tex., replied:

"Why, he said they were making plenty of money, he and Annabelle; that Annabelle was running her business, and he was run-

ning his business, and that they were making plenty of money, and were intending to $75.000 and had it in cash, and were getmove to Oklahoma City. and that they had ting ready to move."

Defendants urge its incompetency at considerable length. One element of this statement was to the effect that Annabelle was running her business and that Billy was running his business; another element was that they were intending to move to Oklahoma City; and another that they had accumulated $75,000. If this statement had never been admitted, there was an abundance of other competent evidence showing that Annabelle was virtually the manager and proprietor of the rooming house or hotel, and that Billy was conducting another line of business, and that they did in fact move to Oklahoma City the latter part of November, 1920. The trial court found that they had approximately $50,000 worth of property which they brought to Oklahoma City. He therefore gave no credence in his finding of fact to that part of the statement as to the accumulation of $75,000 in cash. Had the objection to this evidence been sustained it would have had no bearing upon the sufficiency of the evidence to support the findings of the trial court. Having been admitted, it does the defendants no injury.

The next objection urged under this assignment is that the court committed prejudicial error by admitting over the defendants' objection section 4629 of the statutes of the state of Texas. The objection urged to the admission of this section of the statute is to the effect that courts do not take judicial notice of the laws of a foreign state; that they are established, if important, in the trial of property rights by being first pleaded, and second, proven, and third, found as a fact as any other finding. This particular section had not been pleaded by the plaintiff. The import of the section introduced is that the rights of persons married in other countries or states, moving to Texas, are governed by the laws of Texas as to property acquired in that state. We must concede that the contention of the defendants is in substance correct, but we cannot concede the importance the defendants apparently attach to it. Why the objection is urged so vigorously, we fail to perceive. The law of Oklahoma is to the same import as the law of Texas finding its sanction in the statute in question. In the absence of proof to the contrary, the courts of this state will presume that the laws of a foreign state, when drawn in question are the same as the laws of this state. We think that this had no bearing, either for or against the defendants, in determining the ultimate facts, or the conclusions of law to be drawn therefrom.

Under this assignment, the defendants next contend that prejudicial error was committed by the trial court in overruling their objections to the evidence offered by the plaintiff touching the rent accruing from the Shoup property (which had been purchased with community property, and title taken in the name of the defendant Cora E. Edwards). They urge that this was prejudicial, for that this item had not been pleaded as the pleadings then stood. It is admitted however, that a second amended petition, thereafter filed by permission of the court, did plead the element of rents accruing from this particular property. Even if it was erroneous to admit it, at the time of its admission the pleadings were amended, and there conformed to the proof, and that before judgment, and we think this contention of the defendants is without merit.

The defendants next contend, under this assignment that the court committed prejudicial error in sustaining an objection to a question asked the plaintiff, as to whether or not she heard the remarks of Judge Oldfield (district judge who presided in the trial of the criminal case) as to the effect of a verdict against her on her property rights. We cannot go to the extent of holding that the remarks of a district judge presiding in a criminal case, where the plaintiff was being tried for homocide charged to have been committed by shooting Billy Edwards, has any bearing upon the question involved herein.

The next contention under this assignment is that the trial court committed prejudicial error by overruling objection to the introduction of evidence as to the actual time the plaintiff had been a resident of Oklahoma, the evidence showing that the plaintiff and her husband, Billy Edwards, had actually removed from the state of Texas to Oklahoma City the latter part of November, 1920. The defendants' objection to the plaintiff's being permitted to show the true time she and her husband removed from Texas to Oklahoma, is a reiteration of the contention made many times in the brief that because Annabelle Edwards filed a suit for alimony March 29, 1921, in which was alleged that she had been a bona fide resident of Oklahoma for a period of one year, she was estopped from asserting in this case that she was an actual resident

of the state of Texas for any time within a year prior to the filing of this petition. We will give more extended consideration to the contention here made under another assignment discussed herein. Billy Edwards departed this life within five days after the alleged petition was filed. The evidence shows that this statement was incorporated in the petition presented by a lawyer to her for her signature; that she did not know that this statement was in it, or that this element entered into the right to file a petition to secure alimony. A stipulation made by the attorneys to the effect that both Billy Edwards and Annabelle Edwards registered as legal voters in the state of Texas, paid their poll tax, under the law of the said state, and voted in the state of Texas, in the election of 1920, is disclosed by the record. Even if this allegation was made in the petition, it had no basis in fact. She and Billy removed from Texas to Oklahoma the latter part of November, 1920, and the bank records show that the money on deposit at Ranger was transferred by draft drawn through the Security National Bank of Oklahoma City the latter part of November, and in December, 1920, shortly after they had moved to Oklahoma City. Had this alimony proceeding gone to trial, and she had testified that she had been a resident of Oklahoma for a period of a year, and a judgment had been entered thereon and property rights fixed under the petition, there might be some force to this contention. The mere filing of the petition, under the facts in this record, as we view it, could go no further, even if it could be considered to this extent, than as affecting her credibility

The fourth assignment of error goes to the effect that the trial court erred in giving finding of fact No. 1, which is in substance that the plaintiff and Billy Edwards were married at Galveston, Tex., on the 17th day of August, 1918, at a time when she was legally capable of entering into the marriage contract, and that they remained husband and wife to his death, April 3, 1921. The defendants say this finding cannot be sustained, for that the evidence showed that the plaintiff had once upon a time been married to one Kent Williams, and that Kent Williams was living at the time of the last marriage. The evidence as to this prior marriage is meagre. It shows (record, pages 447 to 450) that the plaintiff and Kent Williams were married several years before she met Billy Edwards; that they lived together only a short time,

when they separated, and that she received information from Kent Williams that he had secured a divorce. This in substance was the entire proof on the subject. No other conclusion could be drawn than that the marriage of the plaintiff with Billy Edwards at Galveston was in due form of law, being disclosed by the marriage license, the certificate of marriage, etc. The defendants offered no evidence, direct or circumstantial, and made no effort to sustain the burden cast upon them to refute the presumption which the law raises under such state of facts, that the first marriage had been dissolved before the second marriage was entered into. Under these facts, the burden was on the defendants, by the authority of the cases. The principle as announced by this court in Chancey v. Whinnery, 47 Okla. 272, 147 Pac. 1036, is:

"When a marriage in fact has been shown, the law raises the presumption that it is valid, casting the burden upon him who questions it to establish its invalidity. This is one of the strongest presumptions known to the law." Clarkson v. Washington, 38 Okla. 4, 131 Pac. 935; Hale v. Hale, 40 Okla. 101, 135 Pac. 1143; James v. Adams, 56 Okla. 450, 155 Pac. 1121; Lewis v. Lewis, 60 Okla. 60, 158 Pac. 368; Jones v. Jones, 63 Okla. 208, 164 Pac. 463, L. R. A. 1917E, 921; Thomas v. James, 69 Okla. 285, 171 Pac. 855; Copeland v. Copeland, 73 Okla. 252, 175 Pac. 764; Brokeshoulder v. Brokeshoulder, 84 Okla. 249, 204 Pac. 284.

In the discussion of this finding, counsel for defendants indulge in extended remarks which go to the extent of insisting that this court should override the presumption of law, because, as they say, both the plaintiff and her former husband, Kent Williams, possess such perfidious characters that certainly she would not hesitate to contract a second marriage, bigamous in its nature. We fail to find anything in the record which indicates anything as to the reputation of character of the former husband of this plaintiff. We are not in a position to concede that the alleged scarlet character of the plaintiff shall overturn the presumptions fixed by the law. We fail to find anything in the record that could be construed as a contention that the plaintiff possessed that degree of refinement, lofty character, or ideals which lends the controlling charm to the sex men are so wont to admire and to render obeisance. But if she had been a woman of such parts, there is nothing in the record to indicate but what she would have been entirely out of her sphere as the wife of Billy Edwards. Whatever may have been her checkered

career before she entered into the marriage relation with him, the record fails to disclose convincing evidence that she was ever other than faithful to her undertakings with her new husband, both in his endeavor to make money and otherwise. After she had found him in bed with another woman, in Ranger, Tex., at a time when she was acting as clerk, day and late into the night, in running the hotel or rooming house which they were operating, infelicity arose. If an orgy of crime was conducted, as the defendants contend in their brief, the record fails to disclose that she did not shoot the dice straight after she married him. We know of no case holding that even if all the defendants' counsel say in regard to the plaintiff were true, that this alters the rules of law. The fourth assignment made by the defendants cannot be sustained.

The fifth assignment of the defendants is that the trial court erred in the giving of finding of fact No. 2, to the effect that the legal residence of W. L. Edwards was established in Ranger, Tex., as was the residence of Annabelle Edwards, in June, 1919, and remained there until November, 1920, and that they had no money or property of value when they went to Texas, and that all the money and property involved in this action was acquired by one or the other, or both the plaintiff and her then husband. W. L. Edwards, through their personal efforts and endeavors, while they were residing and domiciled in the state of Texas; but that the court was unable to determine what part or percentage of the money and property accumulated was acquired by reason of either of the particular businesses engaged in by them. The defendants say that this is wrong, and clearly against the weight of the evidence in two particulars: First, that it finds that Annabelle and Billy remained as legal residents of the state of Texas until November, 1920; and second, that they did not have any money or property of value when they went to Texas, in 1919. In support of the said first contention, the defendants again reiterate the alimony petition and the allegations therein, filed in Oklahoma City March 29, 1921, and insist that, even in the face of all the other facts appearing in the record, this finding of fact by the trial court is against evidence submitted both by the plaintiff's witnesses and the defendants' witnesses, as well as the plaintiff herself. That during the year 1920 they were engaged in the rooming house, hotel, and other businesses in Ranger, state of Texas, is beyond question in fact. Whatever may have been in the alimony petition, and whether there inadvertently or otherwise, whatever were the circumstances under which it was signed, no one can read the record in this case without knowing that the plaintiff and her husband resided in the state of Texas up to the last of November, 1920.

On the second contention counsel for defendants assert that the finding of the trial court was erroneous, for that the record shows that Billy Edwards had $1,000 or $1,500 when he went to Ranger. The record fails to disclose this statement as being true. The record discloses that Annabelle furnished Billy the money on which he went to Ranger; that he negotiated for a rooming house, and did not pay the first month's rent therefor until she went to Ranger, shortly thereafter. That she carried approximately $600 with her, part of which she had borrowed, and paid the first month's rent on the rooming house. The only evidence to sustain the assertion is that of one Harris (record, page 622), which was made in reply to this question: "How much money do you know that he had? A. I can't say exactly; but he had as much as a thousand dollars or more when he opened that house" (referring to the Opera House Rooms). It appeared along with this that he had been in Ranger for a considerable time before his wife came, and was playing in the games; but no rooming house was rented until the wife appeared on the scene. This finding of fact of the trial court is sustained by the record.

The sixth assignment alleges error of the court in finding of fact No. 3. This finding is as to the community property law of the state of Texas, which had been pleaded and introduced in evidence in the trial of the case. Among other things, it provides that money on deposit in a bank is presumed to be the separate property of the person in whose name it was deposited. Under this finding, the presumption would be that the money in the bank was the separate property of Billy Edwards. But the court also found it was rebuttable, and under the facts one-half vested in the husband and one-half in the wife. Such presumption referred to in the Texas community property law is held rebuttable in Hightower v. Hightower (Tex.) 236 S. W. 197. This finding, coupled with other findings of fact of the trial court, is to the effect that the money and other property in question belonged to the community. There is no part of the evidence which can be fairly con-

strued as showing otherwise. Both the plaintiff and numerous other witnesses testified that Billy Edwards had little or no money when he went to Texas; that he and his wife engaged in business (questionable or otherwise is immaterial here); that the fortune involved in this suit sprang as if by magic, and was deposited in the banks and invested in diamonds, automobiles, and later in real estate and mortgages. We are only dealing with this finding now as a finding of fact. Later, we may have occasion to advert to it in reference to the conclusions of law.

The seventh assignment is to the effect that the plaintiff did not prove her right to the property in question under the community property laws of the state of Texas.

The eighth assignment is to the effect that the conclusions of law of the court were contrary to law. These two assignments will be considered in connection with assignment No. 2, not heretofore discussed, which is to the effect that the court erred in overruling the demurrer of the defendants to the testimony of the plaintiff. Each of these assignments raises questions of law, and the discussion of one necessarily goes into the discussion of the other, and the disposition of each can be properly made only by a determination of all. Before proceeding to a discussion of these assignments, a summarized statement of the findings of fact of the trial court is not amiss. They are to the effect that the plaintiff and Billy Edwards were married in due form of law in Galveston, Tex., in August, 1918, at which time they were residents of Carter county, Okla.; that in the spring of 1919 they moved to Ranger, Tex., and there engaged in the business of conducting a rooming house and hotel and that Billy Edwards was separately concerned in carrying on a gambling business; that at the time they removed to Texas neither had money or property of value. That about the last of November, 1920, they removed from the state of Texas to Oklahoma City, at which time they had in money, diamonds, and other articles of personal property, sums which aggregated $50,828; that this was under the control of Billy Edwards, and was brought to Oklahoma under his control. This was accumulated by their businesses while residents of Texas. The trial court found that, under the community property law of the state of Texas, all the property and money acquired by the plaintiff and her husband in said state was the common property of both; that the plaintiff was the owner in her own right of one-half there-

of, at the time the same was acquired, either by herself or her husband, and that her husband was the owner of the other one-half. That her husband rightfully had the possession thereof as her agent or trustee, created by the law, but that his right to the possession did not authorize him to make disposition thereof in fraud of her rights. That on removing to Oklahoma with the property so acquired, the laws of Texas cease to operate with reference to the right to possession and control of said property, but thereupon the laws of this state determine the status of the same and the relation of the parties thereto, and that one-half of such property belonged to the plaintiff and the other half to her husband, and that neither could dispose of the other's interest therein without the other's consent, and that the action of the husband in depositing the money in the name of his mother, in Texas, which was the property of the community, and his action in subsequently depositing the same in the name of his mother in the Security National Bank of Oklahoma City, and the taking of title to certain property described in the decree in the name of the defendant Cora E. Edwards, did not vest in the defendant Cora F. Edwards the right to said property or money as against the plaintiff, but that the same was held by the defendant in trust for plaintiff, to the extent of her share or interest in the common property, and that the action or suit filed by the plaintiff on the 29th day of March, 1921, for alimony against Billy Edwards, alleging that she had been a resident of Oklahoma for one year theretofore, was inadvertently made, and was not true as a matter of fact; that the plaintiff received no benefit from the said action, neither did Billy Edwards nor the defendants herein suffer any detriment or disadvantage therefrom, for that 5 days later Billy departed this life, and said suit thereupon abated, and the instant action was begun on the 11th of April, 1921. That the institution of this last-named action was not inconsistent with the relief sought in the instant case, and that she was not estopped to prosecute this action by reason thereof. That the property specifically described in the findings of fact and decree of the trial court, or the money which was paid therefor, was shown by the evidence to have been acquired while residents of the state of Texas. The defendants contend at great length on these assignments, that the record evidence was insufficient as a matter of law to establish a constructive trust, or, as they say, "a resulting trust." The plain-

tiff's contention is that the property in question should be decreed as held in trust by the defendants and that they are the trustees of a constructive trust for the benefit of the plaintiff. The principle of law sought to be invoked upon the state of facts disclosed by the findings is specifically set out in the 4th Edition of Pomeroy's Equity, secs. 1047-1049, 1051-1053, a partial quotation of one section of which is as follows:

"If one person having money or any kind of property belonging to another in his hands wrongfully uses it for the purchase of lands, taking the title in his own name; or if a trustee or other fiduciary person wrongfully converts the trust fund into a different species of property, taking to himself the title; or if an agent or bailee wrongfully disposes of his principal's securities, and with the proceeds purchases other securities in his own name, in these, and all similar cases equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified in whosesoever hands it may come, except into those of a bona fide purchaser for value and without notice; and the court will enforce the constructive trust for the beneficial owner or original cestui que trust who has thus been defrauded."

The holding in the case of Hayden v. Dannenberg, 42 Okla. 776, 143 Pac. 859, is in consonance with this text, as well as the cases of Helvie v. Hoover, 11 Okla. 687, 69 Pac. 958, and Mendenhall v. Walters, 53 Okla. 598, 157 Pac. 732.

In the case of Dike v. Martin, 85 Okla. 103, 204 Pac. 1106 this court said:

"Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. All instances of constructive trusts may be referred to what equity denominates fraud, either actual or constructive, including acts or omissions in violation of fiduciary obligations. If one party obtains the legal title to property not only by fraud or by violation of confidence, or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner. Courts of equity by thus extending the fundamental principles of trusts * * * are enabled to wield a remedial power of tremendous ef-

ficacy in protecting the rights of property." Cassidy v. Horner, 86 Okla. 220, 208 Pac. 775; Cassidy v. Gould, 86 Okla. 217, 208 Pac. 780.

In 39 Cyc. 538, the author lays down the principle that where the trustee mingles the funds held in trust with his own, so that they cannot be separated, the fund or the property purchased therewith becomes subject to the trust, the burden being upon the trustee or his representative of showing what is and what is not property.

"And furthermore, the cestui que trust may claim the profit of the investment, as the proceeds of the original fund on which he had a charge, to the extent of such charge on the original fund." Fidelty & Deposit Co. v. Rankin, 33 Okla. 7, 124 Pac. 71; Central Nat. Bank v. Connecticut Mutual Life Insurance Co. (U. S.) 26 L. Ed. 693; Farmers & Merchants Bank v. Farwell, 58 Fed. 633.

It is clearly well settled that a third person who acquires title to trust property, in violation of the trust, without giving a valuable consideration therefor, will be deemed to be a trustee of a constructive trust for the beneficial owner. 39 Cyc. 548.

If one-half of this property and money in amount above set out was a vested interest in plaintiff, and not an expectancy, the finding of the trial court, which the record amply justifies, tracing this into the property described in the petition and the decree, then the decree of the trial court stamping it with a constructive trust must be here affirmed. The trial court so found the law of the state of Texas. In Speer's Law of Marital Rights in Texas, sec. 132, we find in part the following:

'The remedy of the wife who is defrauded by the husband's wrongful disposition of the community is not confined to a recovery of the property, for obviously this may be impossible, but there is no reason why she should not have her action against him personally for her loss. He would no more have the right fraudulently to appropriate her community property than her separate property. He would be liable for a conversion of either." Krenz v. Strohmeir (Tex.) 177 S. W. 178.

Again quoting from Speer's Law of Marital Rights in Texas:

"It is the cherished policy of our laws to regard the married union as a species of partnership, in which each partner may own a separate or individual estate, and at the same time share equally in the common gains or acquisitions." Wright v. Hayes, 10 Tex. 130; Routh v. Routh, 57 Tex. 589; Merrell v. Moore (Tex.) 104 S. W. 514; 5 Ruling Case Law, 850.

In McKay on Community Property, sec. 290, we find this statement:

"This doctrine of the wife's equal proprietary interest was adopted in Texas without any attempt to trace or state the rule of the Spanish law, which prevailed in Texas till 1840, and in spite of the fact that community of property in Texas is regarded as statutory salvage from the wreck of Spanish jurisprudence * * * but instead of considering the rule of the Spanish law, the court simply assumed that the wife had a proprietary right equal to that of the husband." Warburton v. White (U. S.) 44 L. Ed. 555; Arnett v. Reade (U. S.) 55 L. Ed. 477.

In 30 C. J. 509, we find the principle announced that the marital domicile governs the rights of husband and wife in personal property acquired therein, and not the law of a domicile to which they became subsequently removed.

"On the removal of husband and wife to another state, the laws of the new domicile govern their rights in such personal property only as subsequently acquired." McKay on Community Property, sec. 525, page 596.

The Oklahoma statute expressly recognizes the right of the wife to the possession, ownership, and control of her property. Sections 6608-6610, Comp. Stat. 1921. In the case of Mendenhall v. Walters, 53 Okla. 598, 157 Pac. 732, it was held that where property was held in common by the husband and wife, in a foreign jurisdiction, but which was brought to the state of Oklahoma and invested in lands and taken in the name of the husband, the husband was trustee in such land in favor of the wife, and those claiming under her, as to her undivided half interest therein.

The law being that the wife had a vested interest in the property accumulated in Texas, and the facts being that this was traced into the property described in the decree of the court, the decree declaring a constructive trust is amply justified, unless the further contentions of the defendants are well taken.

The further question is raised under these assignments of error that the courts will not aid in carrying out an illegal transaction, and that the record discloses that at least a part of the money earned in Texas was in gambling and carrying on gambling games in violation of law. The finding of the trial court as to this was in effect that part was earned in conducting a rooming house and hotel, buying and trading in property, and engaging in gambling, no particular part of the earnings being traceable to either of the particular businesses. The contention of the defendants on this proposition is that the courts of Oklahoma Territory and of the state have uniformly held that in case there is an "illegal consideration, the courts will aid neither party," and that the courts will not hold an accounting of the profits of an illegal enterprise, or one that exists in violation of the laws and public policy of the state. Numerous authorities are cited in support of this contention. The proposition urged would be controlling here, if it had any application to the facts in this case. The defendants in making this argument lose sight of the fact that the plaintiff does not ask an accounting of any transaction had between her and Billy Edwards, or between him and those with whom he may have been engaged in an illegal enterprise. We take it that, under the facts in this record, showing the accumulation of this property while residents of the state of Texas, the reduction of the same to possession and ownership, without any one from whom it came questioning their rights thereto, or suing for the recovery thereof, it is immaterial as to the methods employed either by him or her in the acquisition thereof. The defendants pleaded the character of the businesses engaged in and introduced the evidence, apparently to defeat the alleged first cause of action pleaded in plaintiff's petition, based upon on alleged contract which the trial court eliminated from this case by finding that there was insufficient evidence on which to reach a conclusion there was such contract. By this conclusion of the trial court, the first cause of action and the illegal transactions as the basis of the accumulations pleaded as a defense thereto fall out of the action.

The second cause of action on which the plaintiff recovered merely pleaded the accumulation of the property while residents of the state of Texas. We know this was established; the method of its accumulation is not important. The position of the defendants seems to be that the property acquired by married persons domiciled in Texas, by illegal means, cannot become community property. Money, diamonds, and other items of personal property shown to have been acquired, are not outlawed, but are subject to ownership, although they may have been made the subject-matter of illegal or criminal transactions. The transactions, whatever they were, were consummated, resulting in the accumulations here in question; they are legitimate property

and are subject-matter of legal rights. They were subject to ownership in Texas, where earned; could be given away, passed by inheritance, or disposed of by will. This question is, we think, effectively disposed of in the case of Dickson v. Sanderson (Tex.) 10 S. W. 535, wherein the court determined that the money drawn by the plaintiff as the result of holding a lottery ticket, purchased with her separate property, was itself property of the community. In one sentence, the court said:

"We are constrained to hold that all property realized on purchase of the lottery ticket became community property."

In McKay on Community Property, secs. 243-246, the author lays down the proposition that property acquired by illegal means, though it might be recovered from the wrongdoer, is community property. Among other things, he says:

"Claims based on violation of law are not enforceable, but a thing is not an outlaw merely because it was once the subject-matter of an illegal or immoral transaction."

In another section, the author states:

"An offer to prove that criminal means were employed in the execution, should be rejected, for such proof would not show the separate character of the property, as crime and wrongdoing are not defined as sources of separate property, and in the absence of proof the presumption must control."

The presumption here referred to is the presumption that all property accumulated during marriage is community property. We think it well established that property, whether acquired by illegal means or otherwise, may be sold, incumbered, and taken in execution for debt. It stands on the same footing under the community property law of the state of Texas as if its acquisition had been by means encouraged rather than prohibited by law. Miller v. State, 46 Okla. 674, 149 Pac. 364.

Another contention made under these assignments is that the plaintiff is estopped from maintaining this action by reason of having filed the suit for alimony on March 29, 1921, in which she alleged that she had been a resident of Oklahoma for a period of one year theretofore, and prayed for alimony, etc. We find this contention set forth in the argument under practically all the assignments of error discussed in the defendant's brief. Within 5 days after the filing of this suit, the husband departed this life, and thereby the suit abated. She could not proceed on her petition for the relief therein prayed or amend the same so

as to claim half the property under the community property laws of the state of Texas. We believe that the rule is well established to the effect that if the first action did not proceed to judgment, and no advantage has been gained by the plaintiff or detriment suffered by the defendant, the doctrine of election to defeat the second action cannot be successfully urged. The effect of the defendants' argument is to estop the plaintiff from maintaining this action by reason of merely filing the said suit. We find little, if anything, in the alimony petition inconsistent with the position here taken. In that petition she alleged that they had no property when they were married, and that since the marriage she assisted him in accumulating property, and she prays for her share of it. The principal thing about which much discussion ranges, is the statement, which she contends was inadvertent, and without knowledge that it was contained in the petition, that she had been a resident of Oklahoma for a year prior thereto. The trial court found that this allegation of this petition was inadvertent and untrue, and all of the testimony of the defendant's witnesses, as well as those of the plaintiff, sustains this finding and shows conclusively that she and her husband continued to reside in the state of Texas until some time in November, 1920. That she is not estopped by this former action, or said inadvertent allegation therein on which no relief was secured, is established by the Oklahoma cases: Vose v. Penny, 78 Okla. 238, 190 Pac. 97; C., R. I. & P. Ry. Co. v. Mashore, 21 Okla. 275, 96 Pac. 630; McIntosh v. Lynch, 78 Okla. 85, 188 Pac. 1079; Gorman-Head Auto Co. v. Barrett, 78 Okla. 34, 188 Pac. 1083; Cohoon v. Fisher (Ind.) 44 N. E. 664; Alliance Trust Co., Ltd., v. Choate, 76 Okla. 269, 185 Pac. 113; 9 Ruling Case Law, 961; Sauer v. Bradley, 87 Okla. 277, 210 Pac. 726.

We deem from these authorities that the rule is settled that if in fact her alimony action sought a remedy inconsistent with the present action, that since said action was never tried and no rights were determined thereby, and the plaintiff obtained no advantage and the defendants suffered no disadvantage from it, it would not work an estoppel or a bar to her right to maintain the present action.

There remain assignments 9, 10, and 11, the first of which is to the effect that the judgment is contrary to the findings of fact and conclusions of law of the court; the 10th is that the court erred in overruling the motion for new trial, which was filed

and urged on ground of newly discovered evidence; and the 11th is that the court erred in refusing to strike the second amended petition.

The contention of the defendants on the first named of these assignments is that the property into which the money is traced, if stamped with a constructive trust, should be so stamped only to the amount of plaintiff's vested interest in the residue of the community accumulations at the time they are traced into the property, while plaintiff says that the property into which community funds are traced should be stamped with a constructive trust to the amount of the community property in which she had a vested interest at the time the property was brought to Oklahoma. We think the contention on this question as made by the plaintiff, under the facts in the instant case, is correct. Even before it was brought into Oklahoma, he was attempting to secrete, in fraud of her, her interest in the property. At the time the property was brought into Oklahoma, the law of this state attached thereto and governed the disposition of the same. Her interest in one-half of said property had been and was at the time a vested interest therein, and Billy Edwards held the same in no other capacity than as trustee, and to the amount the plaintiff owned therein he was trustee for her benefit. He is held to the utmost good faith in dealing therewith. When the same was invested in property into which such funds could be traced, the property was trust property in whosescever hands it might be found, unless it be those of a bona fide purchaser for value, without notice of the trust character of the funds that paid therefor, and that to an amount equal to the property held in trust for her benefit and not disposed of by her consent. Brooks v. Garner. 20 Okla. 236. 94 Pac. 694, 97 Pac. 995.

The next contention made under these assignments, which is urged by the defendants, is on the ground of newly discovered evidence. Without discussing at length this contention. we think the rule as announced by this court in the case of Jones v. Oklahoma Planing Mill & Manufacturing Co., 47 Okla. 477, 147 Pac. 999, should be applied:

"A motion for a new trial on account of newly discovered evidence is addressed to the sound discretion of the trial court, and in the absence of an abuse of such discretion, its action thereon will not be reversed."

We fail to find in the record that the court abused its discretion in overruling the motion for new trial on the ground here urged.

The last contention made under these assignments is that the court erred in refusing to strike the plaintiff's second amended petition. This petition was filed before judgment, and it does not disclose that there was any change in the theory of the case on which plaintiff sought a recovery from that set forth in the prior pleading. In this second amended petition. no new facts were set up, but different conclusions from facts previously urged, and prayed, different measure of relief. In the case of Shawnee v. Slankard, 29 Okla. 133, 116 Pac. 803, this court said:

"The allowance of amendments to pleadings, either before or after judgment, in the furtherance of justice, when the same do not change substantially the claim or defense, rests in the sound discretion of the trial court, and the allowance of the same will not be disturbed on appeal, unless it is made to affirmatively appear that its exercise by the court has operated to the prejudice of the rights of the complaining party." Maston v. Glen Lumber Co., 65 Okla. 80, 163 Pac. 128; Kingfisher Mill & Elevator Co. v. Westbrook, 79 Okla. 188, 192 Pac. 209; Carson v. Butt, 4 Okla. 133, 46 Pac. 596; Anderson v. Muhr, 36 Okla. 184, 128 Pac. 296; Myler v. Fidelity Mutual Life Ins. Co., 64 Okla. 293, 167 Pac. 601.

The judgment of the trial court is affirmed.

NICHOLSON, JOHNSON, MASON. WARREN. LYDICK, and GORDON, JJ., concur.

McNEILL, C. J., and HARRISON, J., absent and not participating.