[Civ. No. 3145. Third Appellate District.—October 26, 1926.]

## CLARA MARSH, Appellant, v. MARY E. VAN ALLEN MARSH, Respondent.

[1] HUSBAND AND WIFE—DEATH OF HUSBAND—ACTION BY FIRST WIFE TO RECOVER COMMUNITY PROPERTY FROM SECOND WIFE — DISSOLUTION OF FIRST MARRIAGE—EVIDENCE—FINDINGS.—In this action by the first wife of a deceased husband to recover alleged community property of herself and deceased from the second wife of deceased, it is held that the evidence was insufficient to support the finding that the first marriage had not been dissolved.

[2] ID.—VALIDITY OF MARRIAGE—EXISTENCE OF PRIOR MARRIAGE—EVIDENCE.—Mere proof of a prior marriage and the continued life of both spouses is not sufficient to make a case against a second ceremonial marriage, but there must be a further showing that the first marriage has not been set aside by judicial decree.

[3] ID.—MARRIAGE—PRESUMPTION OF VALIDITY—BURDEN OF PROOF. — Whenever a marriage has been shown the law indulges the presumption that it is valid, and the burden is cast upon those who

2. See 16 Cal. Jur. 935; 18 R. C. L. 417.
3. See 16 Cal. Jur. 934; 18 R. C. L. 416.

question its validity to show its invalidity by strong and persuasive evidence.

[4] ID.—DIVORCE—DEGREE OF PROOF REQUIRED — EVIDENCE. — The presumption of the validity of a second marriage is not overcome by mere proof of a prior marriage and that the first wife had not obtained a divorce, but in order to overcome this presumption there must be proof of the first marriage, that the party attacking the validity of the second marriage had not obtained a divorce and that the records of the courts of the different counties where the husband may have resided and acquired a legal residence disclose that the husband had not instituted and prosecuted any such action; and the burden of proof is cast upon the party attacking the second marriage even though it involves the proving of a negative.

[5] ID.—VALIDITY OF SECOND MARRIAGE—PRESUMPTIONS—EVIDENCE.— The presumption of the validity of a second marriage is not overcome by the evidence of a former spouse that no divorce papers had ever been served upon her and that she had not obtained a divorce.

[6] ID.—DIVORCE — BURDEN OF PROOF — INFERENCES. — The burden of proving that a divorce had not been granted to either party of a former marriage is substantial and is not made by proof of facts from which mere inferences may be drawn.

[7] ID.—CONTINUANCE OF MARRIAGE RELATION—PRESUMPTIONS—VALIDITY OF SECOND MARRIAGE. — The presumption of continuance which ordinarily attaches when the relation of husband and wife has once been shown does not apply when the validity of a second marriage is called in question, but in such instances the presumption of the validity of the second marriage displaces the presumption as to the .continuance of the first relation.

[8] DEEDS—TERMS OF CONVEYANCE—TITLE—PRESUMPTIONS.—It is presumed that title passes according to the terms of a conveyance.

[9] APPEAL — FINDINGS — INCONSISTENT CONCLUSIONS. — If the facts found support the conclusion necessary to the judgment, inconsistent conclusions stated in the findings will be disregarded on appeal.

[10] HUSBAND AND WIFE—MISTAKEN BELIEF OF MARRIAGE—FRAUD OF HUSBAND—SERVICES.—A woman, who in good faith, lives with a

---

5. Presumptions flowing from marriage, note, 34 A. L. R. 464.
6. See 16 Cal. Jur. 935.
7. See 16 Cal. Jur. 935.

man under the mistaken belief caused by his fraud that she is his wife, may recover compensation from his estate for the value of services rendered him during his lifetime.

(1) 38 C. J., p. 1343, n. 81.     (2) 38 C. J., p. 1321, n. 54, p. 1344, n. 96.     (3) 38 C. J., p. 1325, n. 70, p. 1326, n. 71, 72, p. 1329, n. 87. (4) 38 C. J., p. 1328, n. 86.     (5) 38 C. J., p. 1344, n. 86.     (6) 38 C. J., p. 1343, n. 81.     (7) 38 C. J., p. 1328, n. 84.     (8) 18 C. J., p. 412, n. 55.     (9) 4 C. J., p. 1057, n. 85.     (10) 30 C. J., p. 682, n. 4 New.

APPEAL from a judgment of the Superior Court of Los Angeles County. Ralph H. Clock, Judge. Affirmed.

The facts are stated in the opinion of the court.

John T. Curtin and J. Edward McCurdy for Appellant.

Smith & Breslin for Respondent.

PLUMMER, J.—Appellant began this action in the superior court of Los Angeles County against the defendants to recover certain property alleged to be the community property of the plaintiff and one Henry Marsh, deceased, and to set aside certain joint and several deeds executed in favor of the defendant Mary E. Van Allen Marsh and Henry Marsh, deceased, and also to recover a certain joint and several bank account standing in the names of said Mary E. Van Allen Marsh and Henry Marsh, deceased. The defendant Mary E. Van Allen Marsh had judgment and the plaintiff appeals.

The record shows that on the eighth day of December, 1872, Henry Marsh, now deceased, and appellant Clara Marsh married in Chicago, in the state of Illinois; that one child born on the twelfth day of July, 1873, constituted the issue of said marriage. Thereafter, and some time during the year 1891, Henry Marsh and the appellant separated and in 1897 Henry Marsh came to California. Thereafter, and on or about the eighth day of July, 1901, the said Henry Marsh intermarried with the respondent Mary E. Van Allen Marsh, with whom he lived in California until the time of his death, which occurred on the second day of August, 1923. At the time of the death of Henry Marsh the property described in the complaint and also in the

answer stood of record in the names of Henry Marsh and respondent Mary E. Van Allen Marsh, as joint tenants with the right of survivorship.

The complaint alleges that all of this property was the community property of Henry Marsh and the appellant, and further alleges that the property was taken in the name of respondent through her menace, coercion, undue influence, and fraud practiced upon said Henry Marsh. The respondent contends that the property in question is and has always been the separate property of the respondent; that the property was taken in her name as her sole and separate property. In 1922 the property was conveyed to a third person and by said third person conveyed to respondent Mary E. Van Allen Marsh and Henry Marsh, as joint tenants with the right of survivorship, to the intent and purpose that the survivor might have the sole ownership thereof. Some time prior to the marriage of Henry Marsh and the respondent in 1901, a lot was purchased on what was then known as Third Street and later changed to One Hundred and Third Street in the town of Sawtelle, county of Los Angeles, for the sum of $85, payable $10 cash, balance on installments. The testimony shows that the respondent paid these installments and the title to the property was taken in her name; that only $10 was paid prior to the marriage last referred to and the balance paid in subsequent installments; that prior to the marriage last referred to the respondent gave to Henry Marsh, now deceased, the sum of $40, with which sufficient second-hand lumber was purchased to enable the deceased to build a small two-room house. At the time of the purchase this property was of little value, but was sold some years later for some $200 or $300. The respondent and Henry Marsh, after their marriage, moved into the said little house and lived there for some time. Out of the proceeds of the sale of this lot there was purchased for something less than $100 a lot on the corner of One Hundred and Tenth Street and Santa Monica Boulevard, in the town of Sawtelle, title being taken in the name of the respondent. With a part of the proceeds of this sale, to wit, the sum of $75, an adjoining lot to the one just mentioned was purchased, title to which was also taken in the name of the respondent. It was after these transactions that the joint tenancy with

the right of survivorship was created, as we have hereinbefore stated. The record shows that on the Santa Monica Boulevard property a small store building was erected and also some small cottages which were rented. The record shows that the deceased, Henry Marsh, and respondent Mary E. Van Allen Marsh for some period of time, not exactly stated, conducted a small store on the Santa Monica property. About a year before the death of Henry Marsh the Santa Monica Boulevard properties were sold for the sum of $14,000, $4,600 being paid in cash and the remainder, to wit, $9,400, was represented by a note and mortgage executed in favor of the said Henry Marsh and the respondent as joint tenants, with the right of survivorship. The money was placed in the bank in Sawtelle to the joint account of the deceased, Henry Marsh, and the respondent, and of this money there remained at the time of the trial the sum of $3,607.70. At the time of the sale of these last-mentioned properties there was purchased the real property described in the respondent's answer, the title to which was taken in the name of Henry Marsh, now deceased, and the respondent as joint tenants with the right of survivorship.

The record shows some reference to $3,000 worth of Liberty bonds, but there is no evidence in the record of the present existence of these bonds or how they were purchased, or what became of the money, and, therefore, need not be considered herein. It further appears from the record that at the time of the marriage of Henry Marsh and the respondent, Henry Marsh was receiving $6 a month as pension money and $8 per month as a fireman at a soldiers' home. The amount of this pension was increased from time to time until at the date of his death he was receiving $50 per month. The respondent was employed as a dressmaker and was earning some money in that capacity, and it was in that capacity that the respondent earned the money which purchased the first lot and the lumber that went into the building erected thereon. The testimony of the respondent was to the effect that "we just saved— I just saved and worked hard on everything to accumulate and add to what we did have, and we prospered right along with the town, as the town grew; and now you see what Sawtelle is; that is why this property is as much as it is."

Where the money came from to erect whatever improvements there were on the Santa Monica Boulevard property does not appear. It would seem, however, from a reading of the whole testimony that they were of inconsiderable value. No attempt appears to have been made to prove their value or to trace the sources of the money going into the improvements, such as they were. It does appear, however, that the money which went into the original lot and transmuted through sale and purchase into the Santa Monica Boulevard properties was earned by the respondent, title to which was at all times held in the name of the respondent, which would give rise to the presumption that it was her separate property, and we find nothing in the record which would rebut this presumption. There is testimony, however, which supports the conclusion that the original lot, title to which was taken in the name of the respondent, was bought as her property. The respondent testifies that immediately after her marriage to Henry Marsh they went down to Sawtelle to live in the little two-room house on the lot that she had bought; that the house was built on the lot after she had bought the same, and was built with lumber for which she had paid. This is sufficient to establish the ownership of the respondent and, also, the ownership of the respondent to all lots which were bought, and paid for out of the increased selling value of the first lot, title to the same being taken at all times in the name of the respondent. The record does not show that the earnings of the deceased Henry Marsh were in excess of the living expenses of the deceased and the respondent, but assuming that such earnings were in excess of the amount necessarily expended in the maintenance of the deceased and the respondent and that such excess, if any, went into the improvements upon the lots herein referred to, it does not follow that the title to the real estate so improved would be changed from its character as separate property belonging to the respondent to community property belonging to Henry Marsh and the appellant herein. It appears from the record that the respondent worked and saved, that she kept a home for the deceased during a period of more than twenty years, and if it be true that she was not the lawful wife of the deceased, she would nevertheless be entitled to compensation for her services, unless it be shown that the relations assumed by her were

characterized by bad faith and illicit in their inception and continuance.

This brings us to a consideration of the testimony introduced by the appellant to show the invalidity of the marriage of the deceased with respondent Mary E. Van Allen Marsh and the findings of the court made thereon and the facts which we have been setting forth. Upon the subject of the marriage of the deceased and the appellant and the question of divorce the record is as follows, the testimony being taken by way of deposition: "Q. State when you were married to Henry Marsh. A. December 8, 1872. Q. If you state that you were married to Henry Marsh, state when and where you last saw him. A. At his place of business on Thirty-first street, Chicago, about January, 1891. Q. If you answer that you were married to Henry Marsh, state whether or not you ever received any papers of any kind or nature whatsoever of any divorce or annulment proceedings or divorce or annulment proceedings instituted in any court between Henry Marsh and Clara Marsh. A. I received no notice or papers of any kind. Q. If you state that you were married to Henry Marsh, state whether or not you have instituted any divorce proceedings or proceedings for divorce or annulment from your husband, Henry Marsh? A. No, I instituted no divorce proceedings of any kind."

The findings of the court are in substance as follows: That from the eighth day of December, 1872, up to and including the second day of August, 1923, the appellant Clara Marsh and Henry Marsh, deceased, were husband and wife and that the marriage of the appellant to the deceased never was annulled and said persons were never divorced. The court then proceeded to find that the appellant and Henry Marsh, now deceased, did not acquire any community property; that none of the real property involved in this action was purchased with community funds. The court then proceeds to find in favor of the respondent concerning all of the allegations in the plaintiff's complaint relative to good faith of the said Mary E. Van Allen Marsh and relative to her exercising any fraud or undue influence over him. It is further found that none of the property involved in this case was ever the community property of the said Henry Marsh or the community property of said Henry Marsh and the appellant Clara Marsh. The court further found that all

the property involved in this action was the separate property of the defendant and that at the time of the beginning of this action, and for a long time prior thereto, she had been the owner of the same and in possession of the same as her separate property.

[1] It is upon the first finding of the trial court referred to herein that appellant bases her argument for a reversal, on the assumption that the earnings of Henry Marsh, as the husband of Clara Marsh, were community property and could not be transmuted into the separate property of the respondent by reason of section 172 of the Civil Code. The trial court having found upon sufficient testimony that the real estate involved and the proceeds thereof were at all times the separate property of the respondent, the question arises, How can the apparently inconsistent finding as to the existence of the marriage relation between the deceased and the plaintiff be held sufficient to reverse the judgment? In view of the solution of this problem, we have set forth herein the testimony upon which the trial court found the continuance of such marriage relation. This recital shows that the testimony was utterly insufficient to support any such finding and that any such conclusion finds no warrant in law. [2] It has been held time and again by the supreme court of this state that mere proof of a prior marriage and the continued life of both spouses is not sufficient to make a case against a second ceremonial marriage, that there must be a further showing that the first marriage has not been set aside by judicial decree. (*Estate of Hughson,* 173 Cal. 448 [160 Pac. 548] ; *Estate of Harrington,* 140 Cal. 244 [73 Pac. 1000] ; *Maier* v. *Brock,* 222 Mo. 74 [133 Am. St. Rep. 513, 17 Ann. Cas. 763, 120 S. W. 1167] ; *Hunter* v. *Hunter,* 111 Cal. 261 [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756] ; *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal. App. 332 [187 Pac. 996].) In the latter case the evidence is almost identical with that introduced by the appellant in the case at bar. We quote from the opinion: ''In April, 1895, Everett and the plaintiff were licensed to marry and a marriage ceremony was regularly performed. Thereafter and continuously until the death of decedent they lived together in San Bernardino county as husband and wife. Proof was offered on the part of the defendant that the deceased never obtained any divorce from Jennie B. Cowie (a former wife) in San Bernardino county and that Jennie B. Cowie never

obtained a divorce from her husband or received any summons or other papers in relation to an action for divorce on the part of the husband.'' The court in the Everett case refers to the cases which we have cited and then sets forth the law relative to this question as follows: ''There is also a presumption, and a very strong one, in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement, perhaps, would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage,'' citing authorities. ''The evidence offered by appellant on this branch of the case would not sustain a conviction of bigamy if decedent had been tried for that offense. The law presumes that he did not commit bigamy, that he did not commit perjury when he secured the license to marry respondent, and that he did not commit fraud when he procured the policy of insurance. The burden was on appellant to overcome these presumptions, and this it failed to do.''

No effort was made in the case at bar to show that the deceased, Henry Marsh, did not procure a divorce. A number of years elapsed between the separation of the plaintiff and Henry Marsh before the marriage of Henry Marsh to the respondent took place in the state of California. The testimony does show that Henry Marsh was in the state of California some little period of time before his marriage with respondent, yet the record is silent as to the county or counties in which he may have lived, and also the transcript is silent as to whether any search was made of the records in the counties where the deceased may have lived long enough to acquire a legal residence, to ascertain whether any divorce proceedings had been instituted by him. In the case of *Maier* v. *Brock, supra,* relied upon by the supreme court in the Hughson case, as reported in 17 Annotated Cases and the notes there collated, the inadequacy of the testimony to support the finding of the court in this case and the legal conclusion of the trial court, which characterizes the finding in

this case, are distinctly and clearly made apparent. Among other things, it is there stated: **[3]** "Whenever a marriage has been shown the law indulges the presumption that it is valid, and the burden is cast upon those who question its validity to show its invalidity by strong and persuasive evidence, leaving no room for reasonable doubt in the mind of the chancellor. And as has been said, 'This is a presumption of more than ordinary strength. It is one of the strongest known to the law,'" citing a number of authorities supporting the statement, and further: **[4]** "Nor is the presumption overcome by mere proof of a prior marriage of the husband and that *the first wife* had not obtained a divorce, for the reason that the husband might have obtained a divorce and thus become free to contract the second marriage," citing authorities. The notes to this case also point out what proof is necessary to overcome this presumption, to wit: Proof of the first marriage, proof that the party attacking the validity of the second marriage had not obtained a divorce, and that the record of the courts of the different counties where the deceased may have resided and acquired a legal residence disclose that the deceased had not instituted and prosecuted to conclusion any such action. The burden of proof is clearly cast by the authorities upon the party attacking the second marriage, even though it involves the proving of a negative.

**[5]** As stated in *Lewis* v. *Lewis,* 60 Okl. 60 [158 Pac. 368], in order to overcome the presumption that a divorce has been granted where a previous marriage has been shown in a suit contesting the validity of a second marriage, the party attacking the presumption has the burden of proof that neither spouse has obtained a divorce. That the decisions are practically unanimous in support of the principles of law which we have herein stated appears from the case of *Brokeshoulder* v. *Brokeshoulder,* reported in (84 Okl. 249 [204 Pac. 284]), 34 A. L. R. 441, and the notes thereto beginning on page 464. In *Pittinger* v. *Pittinger,* 28 Colo. 308 [89 Am. St. Rep. 193, 64 Pac. 195], we find the facts exactly parallel with the testimony in the case at bar. It is there said: The presumption of validity is not overcome by evidence of a former spouse that no papers in divorce proceedings had ever been served upon her, when it appeared that the husband in separating from his first wife

believed her guilty of such conduct as would entitle him to a divorce, and that six years elapsed before he contracted the second marriage, since it is not impossible that he may have instituted proceedings for a divorce and his first wife not have received them even though they were mailed to her. As we have said, the testimony here shows a period of fourteen years between the separation between the plaintiff and the deceased and the marriage of the deceased with the respondent. In *Coal Run Coal Co.* v. *Jons*, 127 Ill. 379 [8 N. E. 865, 20 N. E. 89], we find this ruling upon similar testimony: The presumption of the validity of the second marriage is not overcome by proof that the first wife was living and had not obtained a divorce, since the husband might have obtained one. To the same effect is the case of *Scott* v. *Scott*, 25 Ky. Law Rep. 1356 [77 S. W. 1122]. Other cases might be cited, but it is sufficient to say that the presumption is not overcome by testimony of one of the parties that such party has obtained no divorce and that no divorce papers, or summons, were ever served upon such party. [6] It is further held that the burden of proving that a divorce has not been granted to either party of a former marriage is substantial and is not made by proof of facts from which mere inferences may be drawn.

[7] The presumption of continuance which ordinarily attaches when the relation of husband and wife has once been shown does not apply when the validity of a second marriage is called in question. In such instances the presumption as to the validity of the second marriage displaces the presumption as to the continuance of the first relation.

The insufficiency of the testimony to sustain the finding of the existence of the marriage relation between the appellant and Henry Marsh does not appear to have been called to the attention of the trial court, it having been apparently assumed that when the first marriage was proven all questions as to such relationship were necessarily foreclosed.

We have set forth the evidence and the law in relation to the prior marriage, not for the purpose of holding that this case should be decided as though the trial court had found in accordance with the presumption which many of the cases which we have cited hold that neither court nor jury possesses the right to disregard, but for the purpose of holding that the relationship which existed between Henry

Marsh and Mary E. Van Allen Marsh, the respondent, was not meretricious and that the finding of the court as to the separate character of the property involved and that the respondent is the owner thereof may be sustained.

[8] As set forth in 18 Cal. Jur., page 409, section 482, there is another presumption which applies to this case, to wit: That title passes according to the terms of a conveyance. [9] Again, it is said in *Danziger* v. *Benson,* 175 Cal. 565 [166 Pac. 313], if the facts found support the conclusion necessary to the judgment, inconsistent conclusions stated in the findings will be disregarded. This rule should apply with added force to a case where the inconsistent finding urged upon the attention of the court is wholly without support in the testimony. Again, as stated in the case of Valentine Fox, deceased, reported under the title of *Wolf* v. *Fox,* 178 Wis. 369 [31 A. L. R. 420, 190 N. W. 90]: [10] A woman who, in good faith, lives with a man under the mistaken belief caused by his fraud that she is his wife, may recover compensation from his estate for the value of the services rendered, and, as stated in *Higgins* v. *Breen,* 9 Mo. 497, a woman so living with a man may recover not only for her services as a housewife, but also for aid rendered to him in his business. Applying the holding in the Fox case and in the case cited and in the notes thereto found in A. L. R., *supra,* the respondent, if occupying only the relationship found by the court, would have been entitled to compensation for her services during the twenty-odd years she and the deceased lived together as husband and wife, and if she can obtain compensation from his estate therefor, the conclusion is inescapable that the deceased had a legal right to make such compensation during his lifetime either in cash or by improvements upon the real estate found to be owned by the respondent and standing in her name. The testimony in the transcript to the effect that the respondent after her marriage with the deceased learned that the deceased had a former wife, we think does not bear upon anything we have said, because the testimony stops there and does not show whether the respondent was informed as to the nonexistence of any divorce and, therefore, had a right to rely upon the presumptions which we have herein set forth. The respondent's good faith, as we have stated, is explicitly found by the trial court. The testimony

shows that the respondent alone of the parties to this action participated in and by her labors aided in securing and obtaining the property involved in this action, that her separate money went into the first purchase of the real estate in question and, therefore, is equitably and justly entitled to the accumulations and proceeds thereof. We think the judgment is just and that the law and the facts support the judgment of the trial court, and that it should be affirmed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.