[Civ. No. 20185. First Dist., Div. One. May 9, 1962.]

Estate of SAM GOLDBERG, Deceased. ADRIENNE GOLDBERG et al., Claimants and Appellants, v. EDITH GOLDBERG, as Administratrix, etc., Claimant and Respondent.

Ruthe Jacobson, Saul C. Nadel and Andrew J. Weisz for Claimants and Appellants.

Hill & Hill and Victor M. Corbett for Claimant and Respondent.

BRAY, P. J.—Appellants, petitioners below, appeal from an adverse "Decree Determining Interest in Estate and Other Matters."

### QUESTIONS PRESENTED
1. Was Sam eligible to marry Edith?
2. Was Edith eligible to marry Sam?
3. Was Edith a putative wife?

### RECORD
Sam Goldberg died intestate. Appellants are three children by his first wife, Bertha Goldberg. His second wife, Edith, is administratrix of his estate. Appellants brought an heirship proceeding which was resisted by Edith. Appellants sought a determination that certain property was held by Edith and Sam as tenants in common and not in joint tenancy; that Edith was never married to Sam and was not his widow. The court found the questioned property to be joint-tenancy property; that the marriage between Sam and Edith was a valid one, their previous marriages respectively having been terminated; that on March 28, 1944, Edith went through a wedding ceremony with Sam believing in good faith that he was free to marry her and she to marry him, and thereafter lived with him believing in good faith that they were validly married; and that Edith was both the actual and the putative spouse of decedent and as such was entitled to the community property and to one-third of Sam's separate property which was not held in joint tenancy, the other two-thirds of this separate property going to Sam's three children. While the appeal was taken from the entire decree, the issue in the briefs is confined to the contention that the evidence

does not support the finding that Edith is the actual and putative wife, or that she is either.[1]

#### EVIDENCE

Sam married Bertha in 1932. There is no evidence of any separations or of a divorce between them prior to 1944. Nor was there any direct evidence that they were not separated or divorced prior thereto. In July 1944, in an action in which Sam defaulted, an interlocutory judgment of divorce was granted Bertha. The following year a final judgment of divorce was entered.

Edith claims that on March 28, 1944, she and Sam were married in Ensenada, Mexico. (This was approximately four months before Bertha obtained the interlocutory decree of divorce.) Edith testified that she had known Sam for about a year and that sometime in 1943 he told her he was separated from his wife and that a divorce was in process. He did not discuss details with her. She had met Bertha and the two children[2] in the year before she and Sam married. After the marriage she sent weekly sums to Bertha for the children's support. Outside of Edith's testimony there is no evidence of the marriage. On a summer voyage to Alaska with Sam all of her documents pertaining to her marriages and divorces were stolen, so she was unable to produce any documents. Recently she had checked at Ensenada for a record of the marriage but no record was found. There was no evidence introduced as to the manner of keeping records there. The ceremony was performed in Spanish, but "they" told her enough so that she understood what was said. She could not remember where in Ensenada the ceremony was performed. She received a marriage certificate.

Edith further testified that from March 28, 1944, until his death in 1960, a period of approximately 16 years, Sam and Edith lived together as man and wife. They both worked during the entire period and used their joint earnings as man and wife. They had joint bank accounts. Sam introduced Edith to his friends and business associates as his wife, and never in any other way. They used their joint earnings to live upon and to make joint investments, including several

---

[1]The court held that the creditors' claims filed were claims against the estate property and not against the joint tenancy property. This finding is not attacked. The court also found that Edith was entitled to administer the estate.

[2]Interestingly enough, the third child was born to Sam and Bertha in 1947.

pieces of property jointly held. Among her occupations were working in a furniture manufacturing plant, and as a maid in the Ambassador Hotel and the Palm Springs Racquet Club where she earned $700-$800 per month. They made joint income tax returns. They took notes as husband and wife in joint tenancy. They borrowed money from respondent's mother and bought property from Sam's mother.

### 1. *Sam's Eligibility.*

 Insofar as Sam's eligibility to marry Edith is concerned, the evidence supports the court's finding that this marriage was valid. Appellants bore the burden of proving that Sam's first marriage to Bertha had not been dissolved. Edith's testimony, believed by the court, plus the fact that she and Sam lived together as man and wife, and held themselves out as such for 16 years, raises a presumption of a valid marriage. Section 1963, subdivision 1, Code of Civil Procedure, presumes ''That a person is innocent of crime or wrong.'' Section 1963, subdivision 30, Code of Civil Procedure, presumes ''That a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage.'' A presumption alone is substantial evidence to support a judgment. (*Estate of Miller* (1956) 143 Cal.App.2d 544, 550 [299 P.2d 1005].)

 The presumption of valid marriage is a rebuttable one. (*Goff* v. *Goff* (1942) 52 Cal.App.2d 23 [125 P.2d 848].) The burden of overcoming the presumption is on appellants. In order to successfully attack a second marriage the party seeking to overcome it must show the former marriage and must prove the negative fact that no divorce was obtained prior to the second marriage in any place in which one of the parties to the second marriage may have resided with his former spouse. (*Hunter* v. *Hunter* (1896) 111 Cal. 261 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411]; *Estate of Borneman* (1939) 35 Cal.App.2d 455 [96 P.2d 182]; *Hamburgh* v. *Hys* (1937) 22 Cal.App.2d 508 [71 P.2d 301].) This is an extremely heavy burden, but the presumption in favor of the validity of a subsequent marriage is based on solid, strong public policy; hence it gives rise to the derivative presumption that the prior marriage was dissolved by divorce or death. It is actually this derivative presumption which must be overcome. (See *Goff* v. *Goff, supra,* pp. 27-28; Witkin, California Evidence, p. 128.)

 The only evidence offered by appellants to overcome the presumption of a valid marriage was the evidence that at

the time of Sam's marriage to Edith, a divorce action between Bertha and Sam was pending and that approximately four months after Sam's marriage to Edith in Mexico, Bertha obtained an interlocutory decree of divorce therein; that Sam defaulted in said action and that Edith sent Bertha support payments which were required by the interlocutory decree. An inference could be drawn that if a divorce had already occurred Sam would have appeared when served with summons and made the fact known and that, by making the support payments, he was in effect acknowledging that there had been no prior divorce. However, the effect of this inference weighed against the strong presumption of a valid marriage was one for the trial court to draw. ▮▮ Moreover, as said in *Marsh* v. *Marsh* (1926) 79 Cal.App. 560, 570 [250 P. 411], ". . . the burden of proving that a divorce has not been granted to either party of a former marriage is substantial and is not made by proof of facts from which mere inferences may be drawn."

The following cases show how difficult it is to overcome the valid marriage presumption. In *Marsh* v. *Marsh, supra,* 79 Cal.App. 560, the first wife testified that she had not filed for divorce nor had she been served with any papers concerning divorce. It was held that these facts were not sufficient to overcome the presumption that the second marriage was valid. In *Hunter* v. *Hunter, supra,* 111 Cal. 261, the defendant married the plaintiff some four and a half years after her marriage to another. Some 22 years after her second marriage, the defendant obtained a divorce from her first husband. In the action before the court on appeal her second husband had sued to annul the second marriage on the ground that because of her first marriage the defendant was ineligible to marry the second time. Notwithstanding the fact that she sought and obtained a divorce from her first husband long after her second marriage, and the fact that in certain affidavits she stated under oath that at the time of her second marriage she was the wife of the first husband at that time, the court held that the presumption that the second marriage was a valid one had not been overcome, and "notwithstanding the fact that owing to her [the defendant's] former statements under oath her testimony was justly subject to grave suspicion" (p. 269), the reviewing court upheld the denial of the annulment, stating (p. 267): "Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often

indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage." As said in *Estate of Borneman, supra,* 35 Cal.App.2d 455, 459, "That rule has been repeated and followed in many cases."

In *Hamburgh* v. *Hys, supra,* 22 Cal.App.2d 508, the wife testified that at the time of her second marriage she had been divorced from her first husband. The record of a divorce proceeding instituted by her against the latter showed that although an interlocutory decree of divorce had been granted her, no final decree was ever obtained. The court said (p. 509) : "Appellants claim that the record here shows that no divorce had been obtained either in that proceeding or any other proceeding instituted by said respondent or her former husband. Assuming, without deciding, that the record so shows, such evidence alone was insufficient to meet the burden cast upon appellants. We find no evidence in the record showing that the former marriage had not been annulled or that the former husband had not died prior to the marriage of said respondents. In the absence of such evidence, the presumption in favor of the validity of the marriage of respondents was not overcome and appellants' claim 'that the evidence established that plaintiffs were not husband and wife' may not be sustained."

The most that can be said of the evidence purporting to overcome the presumption is that, at best, it creates a conflict with the presumption. A mere conflict in the evidence does not warrant a reversal.

2. *Eligibility of Edith.*

Edith had a most interesting background. In 1927 she married Adolphous Prouse. She divorced him in 1943 at Las Vegas. Meanwhile in 1934 she had married Eugene Daimler at Yuma. She divorced him in 1943, just three days before she divorced Prouse. She explained that she thought Prouse had divorced her, but being informed later that he had not, she decided to make sure of a divorce. After this divorce she was informed that Prouse had already died. On March 6, 1944 (three weeks before she married Sam) Edith married Floyd C. Johnson in Orange County. She claims that this marriage was annulled a "couple or three days"

later. She testified that she went to an attorney in Orange County, and told him what she wanted. Two days later she returned and "He gave me my papers and I signed three copies and he gave me one of them." She did not know the name of the attorney or the location of his office. She did not go to court or appear before a judge. She does not know if a suit was ever filed. The document she referred to was stolen from her. She did not testify before a notary or a court reporter or any other person. The only thing she did was raise her right hand and swear in front of her attorney. The County Clerk of Orange County certified that a search of his files showed no divorce or annulment proceeding between Edith and Johnson.

While the same presumption of a valid second marriage covers Edith's participation as covers Sam's participation, we have an entirely different situation as to the proof to overcome the presumption as to Edith's eligibility than we have as to Sam's eligibility. Here Edith's own testimony would overcome the presumption. Her claim that her marriage to Johnson was dissolved prior to her marriage to Sam is that she obtained an annulment in Orange County. Not only do the records show that she did not, but her story of getting an annulment at a lawyer's office is so fantastic and obviously untrue as to compel a finding that in spite of the presumption she was ineligible to marry Sam because she was still married to Johnson. Whatever happened in her lawyer's office, and however bona fide respondent may be in her belief that she did obtain an annulment, it is obvious that she did not. The record of Orange County is conclusive on this subject. Respondent's very effort to support the presumption clearly overcomes it, insofar as a determination that she obtained an annulment is concerned.

This brings us to the question of whether the presumptions provided by sections 1963, subdivisions 1 and 30, require an assumption that during the three weeks elapsing between Edith's marriage to Johnson and her marriage to Sam, Johnson either died or obtained a dissolution of the marriage. The presumption that a second marriage is valid is a strong one. (*Hunter* v. *Hunter, supra*, 111 Cal. at p. 267.) Nevertheless, as with any other disputable presumption, it may be overcome by facts showing the presumption to be untrue. Moreover, "a presumption is dispelled as a matter of law . . . when a fact which is wholly irreconcilable with it is proved by the uncontradicted testimony of the *party relying on it*

410

*or of such party's own witnesses.* [Citations.]'' (*Leonard* v. *Watsonville Community Hospital* (1956) 47 Cal.2d 509, 517 [305 P.2d 36].) ''[W]hen the fact so proved [that is, by the party relying on the presumption] is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case.'' (*Mar Shee* v. *Maryland Assurance Corp.* (1922) 190 Cal. 1, 9 [210 P. 269].)

 So far as presuming that Johnson died within the three weeks is concerned, neither the respondent nor the court relied upon such presumption, even if it could have existed under the facts of this case.[3] As to any presumption that during that period Johnson obtained a dissolution of the marriage, Edith's own testimony (it was not given under Code Civ. Proc., § 2055) is irreconcilable with any such theory. Moreover, it clearly appears by the county clerk's certificate that no such action was brought in Orange County, the residence of the parties at the time of the separation. The county clerk's certificate, although introduced in evidence by appellants, is conclusive evidence, so far as it goes, against the presumption. ''There is a recognized exception to the general rule where evidence of the *opposite* party is absolutely conclusive. . . .'' (*Leonard* v. *Watsonville Community Hospital, supra,* 47 Cal.2d at p. 517, footnote 4.) ''In order to show that no divorce or annulment had been obtained it is not necessary to prove that an examination was made of the public records of jurisdictions other than those in which the parties to the marriage were domiciled. [Citations.]'' (*Estate of Smith* (1949) 33 Cal.2d 279, 283 [201 P.2d 539].) While an action for annulment could be brought elsewhere than in Orange County, no decree could be obtained without service of process on respondent. The limited time would not have permitted the service of process on respondent by substituted service. Had such process been served upon her there would have been no necessity for her contention that she obtained an annulment. While ordinarily a reviewing court is bound by the determination of the trial court as to the credibility of a witness, we are not bound to accept such determination where the witness' story is in itself incredible.

 An annulment could not possibly have been obtained in the manner described by Edith. Edith's actions as described by her raise more than a conflict with the presump-

---

[3]After judgment herein, it was learned that on September 24, 1945, Johnson filed an action for divorce against plaintiff in the Los Angeles Superior Court, showing that he did not die during the three-week period.

tion. They dispel the presumption of a valid marriage completely. The presumption is important and the reasons for it are excellent reasons. However, these matters should not cause the courts to place themselves in the absurd position of presuming conditions which the actions of the party attempting to rely upon them, clearly show do not exist. Justice may be blind, but not that blind. The credulity of the court in supporting the presumption of Sam's eligibility to remarry is stretched as far as can reasonably be expected. It may not be stretched to the extent required to presume Edith's eligibility. Therefore the court's findings of a valid marriage and that Edith is the actual wife of Sam are unsupported.

### 3. *Putative Wife.*

The court also found that Edith entered into the marriage with Sam believing in good faith that both he and she were eligible to marry each other, and that therefore Edith was Sam's putative wife. This finding, in a sense, is inconsistent with the finding that the marriage was a valid one and that Edith was Sam's lawful wife. That inconsistency, however, is not sufficient to invalidate either finding. The finding of putative wife is an alternate finding to the effect that assuming that the marriage was not a valid one, nevertheless Edith is entitled to share in the property of the estate. The court's finding that in good faith she believed herself eligible to marry Sam has determined that she was a putative wife. This finding is supported by the evidence.

The court could have refused to believe Edith's story that she believed that her marriage to Johnson had been annulled; that Sam was free to marry her, and that she and Sam were married. However, the court after observing Edith's demeanor as a witness, chose to believe her story.

The fact that Edith produced no record to support her alleged annulment does not prove that she could not have believed in good faith that she was eligible to marry Sam. In *Freeman S.S. Co.* v. *Pillsbury,* 172 F.2d 321, a search of the marriage records of Tijuana failed to show any record of the marriage testified to by the wife. The court held that this fact did not outweigh the other evidence and held the marriage valid because of the presumption. A somewhat similar holding was made in *Estate of Chandler* (1931) 113 Cal. App. 630 [299 P. 110].

If Edith believed in good faith that a valid marriage ex-

isted, then in law she was a putative spouse. (*Vallera* v. *Vallera* (1943) 21 Cal.2d 681, 684 [134 P.2d 761]; *Sancha* v. *Arnold* (1952) 114 Cal.App.2d 772, 778 [251 P.2d 67, 252 P.2d 55].) The belief held at the time of the alleged marriage is the determining factor (*Sancha* v. *Arnold, supra,* at p. 778; see also 4 Witkin, Summary of Cal. Law, pp. 2715-2716), even though the one holding the belief is legally incapable of entering the marriage (*Estate of Krone* (1948) 83 Cal.App.2d 766, 768 [189 P.2d 741]). While it is true that Edith had met Bertha and the children and knew of Sam's marriage to Bertha, Edith testified that when Sam and she went to Ensenada he told her that he was a free man and that they could get married. She had no reason to disbelieve him and did believe him. She also believed that she had obtained an annulment from Johnson. Admittedly this is a weak type of testimony. ▮ Nevertheless the testimony of a party to the action, if believed, is sufficient to support the judgment of a trial court even though contradicted by a great deal of contrary evidence. (*Menning* v. *Sourisseau* (1933) 128 Cal.App. 635 [18 P.2d 77].) Whether or not the required belief was held in good faith by Edith was a question of fact to be resolved by the trial court. (*Sancha* v. *Arnold, supra,* at p. 778.) ▮ The entire conduct of Sam and Edith upon their return from Mexico supports Edith's statement that a marriage ceremony was entered into there. For 16 years practically their every act was that of a couple who considered themselves married to each other. In a situation as in this case, something can be said for the equities being on the side of the finding of a putative marriage. These parties did hold themselves out for many years as husband and wife and the property under consideration unquestionably resulted from their joint hard work. Thus, the court's finding of the putative marriage must be upheld.

As a putative spouse, Edith is entitled to the same share of the "community" property as she would receive as an actual wife. (*Union Bank & Trust Co.* v. *Gordon* (1953) 116 Cal. App.2d 681, 689 [254 P.2d 644]; *Estate of Krone, supra,* 83 Cal.App.2d 766, 768.)

The judgment is affirmed.

Tobriner, J., and Sullivan, J., concurred.