[Civ. No. 27229. Second Dist., Div. Three. Mar. 11, 1964.]

Estate of HARRY BERG, Deceased. MICHAEL WEIN-
STOCK, as Administrator, etc., Claimant and Appellant,
v. LENA BERG, an Incompetent Person, etc., et al.,
Claimants and Respondents.

Lertzman, Tankel & Toll and Richard B. Leavitt for Claimant and Appellant.

Louis A. Chase, Donald A. Rosen, Bloom & Bloom and D. Brandon Bernstein for Claimants and Respondents.

FORD, J.—The question presented on this appeal is whether the superior court correctly determined that Lena Berg was the surviving wife of Harry Berg, deceased. Harry married Lena in Chicago, Illinois, on September 16, 1909. They separated in 1916. On August 1, 1925, Harry and Clara were parties to a marriage ceremony in Los Angeles. They separated and thereafter Harry accumulated the property which constitutes the assets of his estate.

Pertinent matters relating to the proceedings in probate will be set forth in chronological order. Harry Berg died in Los Angeles on August 29, 1960, leaving a will which was admitted to probate. On April 20, 1961, Lena Berg, who had been declared incompetent, through the conservator of her estate filed in the probate proceedings a petition for a decree determining interests in the estate of Harry. Therein she asserted that she was the widow of Harry and entitled to receive distribution of one-half of his estate.

On May 8, 1961, Jeanne Ludwig, the daughter of Harry and Lena, filed on behalf of herself and her minor daughter a statement of claim of interest in the estate in which reliance was placed upon the provisions of the will. On May 11, 1961, David Berg, a son of Harry and Lena, filed a statement of claim of interest in the estate as an heir and as a person entitled to take a portion of the estate under the provisions of the will. Each of those statements was served on the attorneys respectively representing the other persons asserting interests in the estate.

The petition of Lena which was filed on April 20, 1961, was set for hearing on May 11, 1961, but the matter was continued from time to time and was placed off calendar on July 18, 1961.

After the death of Clara on April 12, 1961, Michael Weinstock was appointed as the administrator of her estate. On February 14, 1962, he filed a petition in which he sought a determination of the persons to whom the estate of Harry should be distributed. Therein it was alleged that the decedent was survived by two sons, David and Robert Berg, and one daughter, Jeanne Ludwig. It was further alleged that Clara was the surviving spouse and that the property was community property. Service of this petition and service of notice of the hearing thereof were made upon the persons named and upon Lena. Thereafter written interrogatories on behalf of Lena addressed to the administrator of Clara's estate were served on all interested persons. The answers

thereto were filed on May 24, 1962, by the attorneys for the administrator after service thereof on all of the other persons heretofore named.

On July 12, 1962, the petition of the administrator of Clara's estate came on for hearing. Counsel for the children and for the grandchild of Harry and for Lena answered that they were ready. Thereupon the following occurred: "THE COURT: You may proceed. The original petition to determine heirship, that is, the petition of Winnifred M. Henry [conservator of the estate of Lena Berg] is not on calendar today. It went off calendar. I don't know whether you gentlemen knew that or not. MR. CHASE [attorney for the conservator] : No, we didn't. We assumed they were all going to be tried at one time. THE COURT: I believe the petition of Michael Weinstock [administrator of the estate of Clara Berg] is the only one on calendar today, but I can consider that as a statement of claim of interest, if that is agreeable? I assume it is in effect the same thing as a statement of claim of interest? MR. CHASE: That will be satisfactory, your Honor. THE COURT: Very well." Counsel for the administrator of Clara's estate voiced no objection and proceeded with evidence in support of his position that Clara had been the surviving wife, after stating that "the facts in this case appear to involve two purported marriages which have taken place; one to a Lena Berg and the other to the decedent, Clara Weinstock."

After evidence had been received on July 12, 1962, on behalf of the various parties, the court, citing *Estate of Ward,* 127 Cal.App.2d 207 [273 P.2d 607], raised the question as to whether it had jurisdiction to consider any claim of interest other than that of the administrator of Clara's estate inasmuch as no statements of claim of interest had been filed subsequent to the administrator's petition. The matter was continued to July 20, 1962.

On July 17, 1962, a statement of claim of interest in the estate was filed by Jeanne Ludwig on behalf of herself and her minor daughter. On the same date David Berg filed such a statement. A statement of claim of interest was filed by Robert Berg on July 20, 1962. When the hearing was resumed on the latter date, the attorney for the conservator of the estate of Lena Berg asked permission to file a statement of claim of interest on her behalf. Counsel for the administrator of Clara's estate objected upon the ground that such statement had not been tendered for filing in proper time. The same objection was made with respect to the other statements.

A portion of the record is as follows: ''THE COURT: Have you been prejudiced at all because of the dates of these respective claims of interest? MR. LEAVITT [counsel for the administrator of Clara's estate] : Only in that had they been filed earlier they would have had standing to represent their clients in the matter which has been pending. THE COURT: Have you been prejudiced at all? MR. LEAVITT: I suppose not. THE COURT: Is there anything that is set forth in these that you did not know that there was such contention beforehand? MR. LEAVITT: No, there is not, your Honor. THE COURT: The objection, if it is an objection as to each, is overruled. If it is a motion to strike, the motion is denied as to each.'' A motion to strike the evidence theretofor elicited on behalf of the parties other than the administrator of Clara's estate was denied.

The first contention made on behalf of the appellant, the administrator of Clara's estate, is that the trial court had no jurisdiction to receive the evidence introduced by the respondents because they failed to file timely statements of their respective claims of interest in the estate. Reliance is placed upon section 1080 of the Probate Code[1] and *Estate of Ward,* 127 Cal.App.2d 207 [273 P.2d 601]. In the *Ward* case, the respondent filed no statement of a claim of interest in the estate in response to the petition for determination of heirship. The court said (127 Cal.App.2d, at p. 209) : ''The procedure outlined in the foregoing section [Prob., Code § 1080] is clear. It means exactly what it says; that any person claiming an interest in the estate adversely to the petitioner, in order to have a judicial determination thereof, must file a written statement setting forth his interest in the estate.'' The court further stated (127 Cal.App.2d, at p. 211) : ''Therefore since respondent did not comply with the requirements of section 1080 of the Probate Code he had no standing before the probate court and not having set up any right or rights in himself, should not have been heard to

[1]Section 1080 of the Probate Code is in part as follows: ''When four months have elapsed after the first publication of notice to creditors, and a petition for final distribution has not been filed, ... any person claiming to be an heir of the decedent or entitled to distribution of the estate or any part thereof may file a petition setting forth his claim or reason and praying that the court determine who are entitled to distribution of the estate .... Any person may appear and file a written statement setting forth his interest in the estate. No other pleadings are necessary and the allegations of each claimant shall be deemed to be denied by each of the other claimants to the extent that they conflict with any claim of the latter.''

contest the right of petitioner." The decree in favor of the respondent was reversed.

In determining whether the *Ward* case governs the disposition of the present case, it is sufficient, insofar as the appellant's position is concerned, to consider the matter as a contest between Lena and Clara. As has been noted, on April 20, 1961, a petition for a decree determining interests in the estate was filed on behalf of Lena by Winnifred M. Henry, the conservator of her estate. In that petition it was alleged that she was the widow of Harry and entitled to have distributed to her at least one-half of the estate. It is true that it was later ordered that that petition be placed off calendar, but that order was not equivalent to a dismissal of the petition. (See *Guardianship of Walters,* 37 Cal.2d 239, 244 [231 P.2d 473]; *Guardianship of Lyle,* 77 Cal.App.2d 153, 155-156 [174 P.2d 906].) On July 31, 1961, a statement of claim of interest in the estate was filed by Michael Weinstock who was petitioning for letters of administration of Clara's estate. Therein it was alleged that Clara had been the surviving spouse of Harry and that the property was community property. That statement was served upon the counsel representing Lena. As has been set forth above, at the commencement of the hearing on July 12, 1962, the court suggested that the earlier petition on behalf of Lena could be considered to be a statement of claim of interest in response to the petition of the administrator of Clara's estate filed on February 14, 1962. Counsel appearing on behalf of Lena's claim acquiesed in that procedure and counsel for the administrator of Clara's estate voiced no objection. Under such circumstances the appellant herein was in no position thereafter to assert that his petition relating to Clara's claim which was set for hearing on July 12, 1962, and the prior petition on behalf of Lena, treated as a statement of her claim of interest in response to appellant's petition, did not frame the issue of which person, Lena or Clara, was the lawful wife of Harry at the time of his death. (See *Brainard* v. *Brainard,* 76 Cal. App.2d 850, 853 [174 P.2d 702]; cf. *Estate of Wise,* 34 Cal.2d 376, 382 [210 P.2d 497].) The procedure followed was such that the court had jurisdiction to determine that issue. (See *Estate of Wise, supra,* 34 Cal.2d 376, 382-383.) No prejudice was suffered by the appellant and there was no error.

 The appellant contends that there was insufficient competent evidence to sustain the determination of the court. The evidence will be summarized.

A certified copy of a marriage certificate showing a marriage between Harry and Clara in 1925 was received in evidence. Michael Weinstock, Clara's nephew and the administrator of her estate, testified that Harry and Clara lived together as man and wife from the time of their marriage until about 1935. It was stipulated that Clara died on April 12, 1961.

Sonia Maisnik testified that she visited Harry and Clara when they were living together as man and wife. They were together about 10 or 11 years.

Several witnesses gave testimony in support of the case of the conservator of Lena's estate. David Berg, a son of Harry and Lena, testified that Lena had been residing at the Chicago State Hospital in Chicago since 1916 or 1917. In 1930 David moved from Chicago to Los Angeles and he resided with his father and sister in Clara's house until sometime in 1931. Harry and Clara did not live together as husband and wife. About a week after David came to Los Angeles, he and Harry and Clara had a conversation, part of which he related as follows: " ... my father said he never got divorced, and Clara Weinstock told me that my father had been living in her place for so long that a lot of people just addressed him, called her Mrs. Berg, ..." As to another conversation, the witness testified in part as follows: "... the first night that I came here from Chicago, so we set up until about 2:30 o'clock in the morning, just Clara Weinstock, my father, and myself, and my dad started asking me questions about my mother, ... and asked me if I saw her. I saw her just a few days before I left Chicago, ..." David Berg further testified that about the end of 1931, he, his father and his sister moved into an apartment on St. Louis Street in Boyle Heights. At that time his father had less than $100 and owned no real estate. Harry never lived with Clara after that.

Over the objection that it was inadmissible hearsay, David Berg was permitted to relate what his father had told him as to the places in which he had resided after his separation from Lena. Such testimony was: "He told me that my sister and I were in New York with my mother, were living with my mother. Then my mother got sick. He sent her to Chicago, and then he came to Chicago with my sister—with my sister and myself, and then from there he left and he went to Cleveland to live, and he came back to Chicago. Then from there he went to Reno, Nevada, and San Francisco, and then

he came to Los Angeles. Q. By Mr. Chase: So that to your knowledge, your father told you that he lived in New York City and in Cleveland, Reno, Nevada, San Francisco, California and Los Angeles, as well as Illinois? A. The only places, yes.''

Jeanne Ludwig, the daughter of Harry and Lena, testified that she came to Los Angeles ''in the early thirties.'' She lived with her father, her brother and Clara. As far as she could remember, her father did not live with Clara after 1931.

Irene Kaplan knew Harry and visited his home in Los Angeles in 1932 and thereafter. His daughter and his son Dave lived with him.

The testimony of Sarah Blender was given by means of her deposition. She was Lena's sister. Lena married Harry in Chicago. The ceremony was performed by a rabbi. The younger son of Harry and Lena was born in the Chicago State Hospital about four months after Lena entered that institution. The witness did not know of any time that Harry visited Lena there. She was placed in that hospital by the witness' brother-in-law and older sister. The children of Harry and Lena were ultimately placed in ''the Jewish Home.'' Further testimony of Sarah Blender was: ''Q. When you say he doesn't know, he knew obviously that his wife was in an institution. A. I couldn't tell you but he lived for a little while in New York, he took her to New York for a little while and he lived there. How he got to New York, I don't know but then when she got sick, he brought her to Chicago to my sister with the children and he said he was going to look for work and two days later, he went away and we never heard from him again. Q. In other words, he left your sister and their children at your other sister's house and from that point on, he had nothing more to do with them? A. No, I never heard from him until I heard that he was here in Los Angeles. Q. And he never was in contact to your knowledge with the children or your sister? A. No.''

Certificates of public officials with respect to public records were received in evidence. One document was a certified copy of the marriage certificate of Harry and Lena evidencing their marriage in Chicago, Illinois, on September 16, 1909. Certificates of the Clerk of the County of Queens, New York, were in substance that a search of the records for the period from September 16, 1909, to September 30, 1925, disclosed no matrimonial action in the names of Harry Berg and Lena Berg. Other certificates of a similar nature related to the

records of the County of New York, New York, for the period of September 16, 1909, to December 31, 1925, the records of the County of Bronx, New York, for the period of January 2, 1914, to September 30, 1925, the records of the County of Kings, New York, for the period of January 1, 1909, to September 30, 1925, the County of Richmond, New York, for the period of August 1, 1909, to September 30, 1925, the records of the Court of Common Pleas and the Court of Insolvency of Cuyahoga County, Ohio, for the period of January 1, 1909, to April 27, 1962, the records of the Second Judicial District Court of Nevada, in and for Washoe County, at Reno, Nevada, for the years 1910 to 1925, inclusive, the records of the Circuit and Superior Courts, respectively, of Cook County, Illinois, for the period of 1909 to 1925, inclusive. A certificate of the County Clerk of the County of Los Angeles for the period of January 1, 1909, to December 30, 1925, and a certificate of the County Clerk of the County of San Francisco for the period of 1910 to 1925, inclusive, each to the effect that no record of a divorce or annulment action between Harry Berg and Lena Berg could be found, were received in evidence.

The appellant asserts that it was prejudicial error to permit the introduction in evidence of Harry's statement to his son of his previous places of residence. Obviously Harry was qualified to speak of his own personal history. (See 5 Wigmore on Evidence (3d ed. 1940) § 1490; Witkin, Cal. Evidence, § 279.) The more difficult problem is whether the prior place of residence of the declarant falls within the kind of fact which may be the subject of a statement within the exception to the hearsay rule for family history statements. Guidance is found in Dean Wigmore's reasoning which is expressed as follows: "There is no definite or formal limitation as to the kind of fact that may be the subject of the statement. The general inquiry ... should be: Were the circumstances named in the statement such a marked item in the ordinary family history and so interesting to the family in common that statements about them in the family would be likely to be based on fairly accurate knowledge and to be sincerely uttered? There is ample authority for a broad application of this principle, although the authorities are by no means in harmony."[2] (5 Wigmore on Evidence (3d ed. 1940) § 1502.)

---

[2]In section 250 of his Students' Textbook of the Law of Evidence (1935), Dean Wigmore states: "Family affairs are constantly talked

432

To reject the evidence of Harry's declarations in the present case would be to foster a rule of exclusion which would result in a failure of justice in many cases. (Cf. *Estate of Borneman*, 35 Cal.App.2d 455, 460 [96 P.2d 182]; see *Estate of Goldberg*, 203 Cal.App.2d 402, 406 [21 Cal.Rptr. 626].)[3] Where a man has deserted his family for an extended period of time and has not kept them informed of his movements, his declarations as to his subsequent places of residence may offer the only basis for the acquisition of information with respect to whether he has altered his family relationships by acts having legal consequences. (See *Estate of Strong*, 54 Cal.App.2d 604, 608-610 [129 P.2d 493].) The places in which a man has resided form an important part of his personal history and his declarations with respect thereto may ordinarily be assumed to have been sincere and trustworthy. We find no error in the ruling of the court with respect to the decedent's declarations.

 That the trial court was warranted in determining that Lena was the surviving spouse of Harry is clear from a review of the governing law. In *Estate of Smith*, 33 Cal.2d 279, the court said at page 281 [201 P.2d 539]: "It is well established that when a person has entered into two

over in the family, and the members who know what happened tell what they know, with spontaneous sincerity, to those who did not know. In this way are canvassed the facts of birth, marriage, residence, and death; the times and places of such events; the names of near relations; and the like. Thus a statement by a famil member becomes fairly reliable; in case of his death, so that he cannot be called to the stand, we may listen to testimony of what he said, by exception to the hearsay rule."

[3]In *Estate of Goldberg* the court stated (203 Cal.App.2d, at p. 406): "The presumption of valid marriage is a rebuttable one. (*Goff* v. *Goff* (1942) 53 Cal.App.2d 23 [125 P.2d 848].) The burden of overcoming the presumption is on appellants. In order to successfully attack a second marriage the party seeking to overcome it must show the former marriage and must prove the negative fact that no divorce was obtained prior to the second marriage in any place in which one of the parties to the second marriage may have resided with his former spouse. (*Hunter* v. *Hunter* (1896) 111 Cal. 261 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411]; *Estate of Borneman* (1939) 35 Cal.App.2d 455 [96 P.2d 182]; *Hamburgh* v. *Hys* (1937) 22 Cal.App.2d 508 [71 P.2d 301].) This is an extremely heavy burden, but the presumption in favor of the validity of a subsequent marriage is based on solid, strong public policy; hence it gives rise to the derivative presumption that the prior marriage was dissolved by divorce or death. It is actually this derivative presumption which must be overcome. (See *Goff* v. *Goff*, *supra*, pp. 27-28; Witkin, California Evidence, p. 128.)"

successive marriages, a presumption arises in favor of the validity of the second marriage, and the burden is upon the party attacking the validity of the second marriage to prove that the first marriage had not been dissolved by the death of a spouse or by divorce or had not been annulled at the time of the second marriage. [Citations.] That burden is sustained if the evidence, in the light of all reasonable inferences therefrom, shows that the first marriage was not so dissolved or annulled." ■ The court further said (33 Cal.2d, at p. 283): "In order to show that no divorce or annulment had been obtained it is not necessary to prove that an examination was made of the public records of juridsictions other than those in which the parties to the marriage were domiciled." A review of the evidence heretofore summarized compels the conclusion that there was ample support for the determination of the trier of fact that the marriage of Harry and Lena was not dissolved or annulled prior to Harry's death.

■ The final contention of the appellant is that the trial court did not follow what is asserted to be the applicable provision of section 61 of the Civil Code.[4] It is true that in applying for a license to marry Clara, Harry stated that he was "widowed." That statement was some evidence of what he then believed. See *Estate of Borneman, supra*, 35 Cal. App.2d 455, 459.) But upon a consideration of all of the evidence in the case, the trial court was warranted in reaching the conclusion that Harry did not believe in good faith that Lena was deceased at the time he went through a marriage ceremony with Clara. (See *Goff* v. *Goff*, 52 Cal.App.2d 23, 28 [125 P.2d 848].) Moreover, the testimony of Sarah Blender supported a determination that Harry, and not Lena, was the absent spouse within the meaning of section 61 of the Civil Code. (See *Estate of Richards*, 133 Cal. 524, 528 [65

---

[4]Section 61 of the Civil Code is in part as follows:

"A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless:

". . . . . . . . . . . . .

"2. Unless such former husband or wife is absent, and not known to such person to be living for the space of five successive years immediately preceding such subsequent marriage, or is generally reputed or believed by such person to be dead at the time such subsequent marriage was contracted. In either of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal."

434

P. 1034].) Consequently, the appellant's contention is without merit.

The decree is affirmed.

Shinn, P. J., and Files, J., concurred.